STATE of Iowa, Appellant,

v.

J. Leonard AZNEER, Appellee.

No. 94–196.

Supreme Court of Iowa.

Jan. 18, 1995.

 

Bonnie J. Campbell, Atty. Gen., Mary Tabor, Asst. Atty. Gen., John P. Sarcone, County Atty., and Fred W. Gay, Asst. County Atty., for appellant.

Nicholas Critelli, Jr. of Nick Critelli Associates, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and ANDREASEN, JJ.

HARRIS, Justice.

■ We granted discretionary review of a trial court ruling interpreting the word "willfully" in Iowa Code section 56.16 (1993) (providing penal consequences of violating the campaign finance disclosure law). The trial court held the term means "voluntary and intentional violation of a known legal duty." The State challenges this interpretation and contends the word should be held to mean "intentionally, deliberately, and knowingly." We affirm.

■ The facts are stipulated. Defendant J. Leonard Azneer made political contributions in his own name, for which he was reimbursed by his employer, University of Osteopathic Medicine and Health Sciences. Several other university employees who also made contributions were reimbursed by the university through Azneer. The parties stipulated that Azneer had no knowledge of the existence of any provision of Iowa Code chapter 56. The only issue in the case is the construction of the term "willfully" as it appears in the statute:

> [Section 56.12] A person shall not make a contribution or expenditure in the name of another....
>
> ....
>
> [Section 56.16] Any person who *willfully* violates any provisions of this chapter shall

upon conviction, be guilty of a serious misdemeanor.

(Emphasis added.) In matters of statutory construction, our review is on error. Iowa R.App.P. 4.

I. Courts have long struggled for an all-encompassing definition of the word "willfully." These efforts have been unsuccessful because no generic term can accommodate all the various offenses in which the subject's will is an intended element of a crime. *See Spies v. United States,* 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418, 422 (1943) ("willfully ... a word of many meanings, its construction often being influenced by its context"); *State v. Osborn,* 368 N.W.2d 68, 70 (Iowa 1985) (same).

■ Better reasoned cases suggest how to choose between the competing definitions urged here. The State's suggested definition is appropriate for statutes that criminalize conduct that is inherently wrong. Azneer's suggested definition is appropriate for statutes that criminalize conduct that, although not inherently wrong, the legislature wishes to outlaw for some other reason. The choice is made by categorizing the conduct in accordance with the classic distinction between acts that are malum in se (wrong in themselves) and those that are merely malum prohibitum (wrong because prohibited). According to one respected commentator:

> [T]he vast network of regulatory offenses which make up a large part of today's criminal law does not stem from the mores of the community, and so "moral education no longer serves us as a guide as to what is prohibited." Under these circumstances, where one's moral attitudes may not be relied upon to avoid the forbidden conduct, it may seem particularly severe for the law never to recognize ignorance or mistake of the criminal law as a defense. Moreover, some would question whether it is desirable to characterize as criminal an individual who has not demonstrated any degree of social dangerousness, that is, a person whose conduct is not antisocial because (i) he reasonably thought the conduct was not criminal, and (ii) the conduct is not by its nature immoral.

**300**

Wayne R. LaFave and Austin W. Scott, Jr., *Criminal Laws,* 414–15 (2d ed. 1986). This principle was explored in some detail in *United States v. Aversa,* 984 F.2d 493, 496–502 (1st Cir.1993), *vacated sub nom. Donovan v. United States,* —— U.S. ——, 114 S.Ct. 873, 127 L.Ed.2d 70 (1994).

Aversa was charged with violation of the federal bank records act. The court thus felt obliged to apply a third definition: "the violation of a known legal duty or the reckless disregard of the same." The *Aversa* Court reasoned that this hybrid definition was appropriate for the specialized conduct which involves an extremely small category of cases. This definition however seems to have been later rejected by the United States Supreme Court. *Ratzlaf v. United States,* 510 U.S. ——, ——, 114 S.Ct. 655, 657, 126 L.Ed.2d 615, 620 (1994) ("willfulness" requires showing "defendant acted with knowledge that his conduct was unlawful").

In urging its definition, the State cites our cases which correctly applied it to offenses that were malum in se. *See State v. Dunn,* 199 N.W.2d 104, 107 (Iowa 1972) (arson); *State v. Wallace,* 259 Iowa 765, 773, 145 N.W.2d 615, 620 (1966) (kidnapping). They are not in point for statutes criminalizing conduct that is merely malum prohibitum. Azneer's argument concedes the State's suggested definition would apply for these and all other crimes where the conduct is obviously wrong even in the absence of a criminal statute.

II. We think Iowa Code section 56.12 addresses conduct that is malum prohibitum. There is clearly nothing inherently wrong in making a political contribution. Some stealth or surreptitiousness might be involved in making the political contribution in the name of another. But we cannot say that to do so is malum in se. It is easy to imagine employers who wish to make political contributions without being exposed to any political consequences. The practice posed by the facts stipulated here may well not engender admiration. The legislature was obviously

prompted to criminalize them. But the practice posed falls far short of qualifying as malum in se.

To emphasize the point, Azneer points to Iowa Code section 56.15 (prohibiting certain entities from making political contributions). Section 56.15, in contrast with section 56.16, does not have a culpable mental state requirement.[1] The legislature's inclusion of the willfulness requirement in section 56.16, while at the same time excluding it in section 56.15, must have been deliberate.

Although the State sees this holding as an unreasonable erosion of the rubric that ignorance of the law is no excuse, we do not. The rule we apply is a narrow one. It goes only to interpret the word "willfully," a word the courts have long considered to be somewhat ambiguous. The issue arose only because the legislature employed the word in Iowa Code section 56.16. So our holding does not address statutes that do not employ the word "willfully."

Our holding is consistent with language we quoted and approved in *State v. Clark,* 346 N.W.2d 510, 512 (Iowa 1984):

> So long as the forbidden act is one which is commonly understood to be morally questionable, or one which unjustifiably endangers persons or property, or is an activity which is commonly regulated, such as the operation of motor vehicles, the [presumption that everyone knows the law] is not unreasonably burdensome.

(Quoting 4 J. Yeager and R. Carlson, *Iowa Practice* § 10 (1979).)

The trial court was correct in holding that the term "willfully," as used in Iowa Code section 56.16, means a voluntary and intentional violation of a known legal duty.

AFFIRMED.

---

1. "Any person convicted of a violation of any of the provisions of this section shall be guilty of a serious misdemeanor." Iowa Code § 15.15(5).