# IN THE SUPREME COURT OF IOWA

No. 106 /05-0933

Filed December 22, 2006

**STATE OF IOWA,**

Appellee,

vs.

**BRADLEY HOWARD BOWER,**

Appellant.

Appeal from the Iowa District Court for Cedar County, J. Hobart Darbyshire, Judge.

Defendant appeals his conviction for harassment of a public officer. **JUDGMENT OF CONVICTION AFFIRMED, SENTENCE VACATED, CASE REMANDED WITH DIRECTIONS.**

Gregg A. Geerdes, Iowa City, for appellant.

Thomas J. Miller, Attorney General, Sharon K. Hall, Assistant Attorney General, Lee W. Beine, County Attorney, and Jeffrey L. Renander, Assistant County Attorney, for appellee.

**WIGGINS, Justice.**

A magistrate found Bradley Howard Bower guilty of harassment of a public officer. On appeal, the district court, sitting as an appeals judge, affirmed the conviction and imposed a harsher sentence than that imposed by the magistrate. In this appeal, Bower claims Iowa Code section 718.4 (2003) is unconstitutional and there is not substantial evidence to support his conviction. Our review of the record indicates Iowa Code section 718.4 is constitutional and there is substantial evidence to support his conviction. Therefore, we affirm his conviction.

Bower further asserts it is impermissible for the district court to increase his sentence following his unsuccessful non-de novo appeal. Because we agree the district court's imposition of a harsher sentence violates Bower's due process rights, we vacate the sentence of the district court and remand the case for the district court to enter judgment for the same sentence imposed by the magistrate.

## I. Facts.

On our de novo review of the facts, we find around 2:30 a.m. on November 28, 2004, West Branch police officer Jonathan Kolosik observed a red pickup truck driving the wrong way on a one-way street. Not knowing where the truck was going, Kolosik drove on the street in the proper direction in an attempt to head the truck off. By the time Kolosik noticed the truck again, it was parked in the driveway of Kyle Coleman's residence, which is a few houses away from Bower's home or roughly one city block. When Kolosik saw the truck in Coleman's driveway, he also observed two people kneeling in front of the truck. Kolosik pulled over in front of the Coleman residence and the two people came over to him. Kolosik identified the two as Coleman and Jerrod Rummells. Kolosik recognized the truck as belonging to Rummells.

When speaking to Rummells, Kolosik noticed a faint smell of alcohol on him. He also saw Rummells had some marks on his hands, consistent with being in a fight. At the time of the stop, Kolosik knew a fight had occurred at a bar in a nearby community.

About ten minutes after Kolosik began talking to Rummells and Coleman, Bower walked toward the scene from his home. Kolosik, who was inside his squad vehicle at the time, exited the vehicle as soon as Bower approached.

Kolosik characterized Bower's demeanor as threatening, irate, agitated, and very angry. Kolosik testified that Bower told him "to get out of [his] area" and Kolosik "wasn't supposed to be there." He also testified Bower said he was "going to sue [Kolosik's] ass," and he "owned [Kolosik]" and "paid [Kolosik's] salary."

Kolosik testified he asked Bower repeatedly to leave and told him the situation did not concern him. Instead of leaving or maintaining his position some distance from Kolosik, Bower continued to move closer. At one point during the encounter, Bower was close enough for Kolosik to smell a faint odor of alcohol on Bower. At this point, Kolosik called for backup. Seeing that the situation was escalating, Rummells intervened in the confrontation. Kolosik told Rummells to explain the situation to Bower. Rummells eventually pulled Bower away from Kolosik's personal space. Rummells then talked to Bower and Bower left the scene.

With Bower now gone, Kolosik advised Rummells and Coleman to remain at Coleman's residence because he believed they were intoxicated. However, Kolosik decided not to charge either of them with any offense. After completing his investigation, Kolosik left the scene.

## II. Proceedings.

On December 10, 2004, Kolosik filed a complaint alleging Bower committed harassment of a public official in violation of Iowa Code section 718.4. Bower moved to dismiss the complaint asserting section 718.4 is unconstitutional in that it violates Article I of the United States Constitution and article I of the Iowa constitution. The court overruled the motion.

The case proceeded to trial before a magistrate. The magistrate convicted Bower. Reasoning "the statute only criminalizes conduct that interferes with an ongoing investigation," the magistrate found the statute was not overbroad on its face or as applied. The magistrate further explained it was not Bower's words alone that created the violation, but it was also his conduct of approaching an officer to a point at which the officer feared for his own personal safety. The magistrate sentenced Bower to pay a $100 fine plus surcharge and costs.

Bower appealed the magistrate's decision to the district court. The district court affirmed Bower's conviction, finding the statute criminalizes conduct rather than speech and that there was substantial evidence to support Bower's conviction. The district court increased Bower's sentence to a $500 fine plus costs and a suspended thirty-day jail sentence.

Bower filed an application for discretionary review, which we granted.

## III. Issues.

Bower raises three issues on appeal. They are: (1) whether Iowa Code section 718.4 is unconstitutional; (2) whether there is substantial evidence to support Bower's conviction under section 718.4; and (3)

whether it is permissible for the district court to increase Bower's sentence following his unsuccessful non-de novo appeal.

## IV.  Scope of Review.

Our review is de novo when we assess an alleged violation of constitutional rights.  *State v. Shanahan*, 712 N.W.2d 121, 131 (Iowa 2006).  This review requires an independent evaluation of the totality of the circumstances.  *Id.*  "The fact findings of the district court are not binding; however, because the district court had the opportunity to assess the credibility of the witnesses, we do give deference to those findings."  *Id.*

In regards to Bower's claim as to the sufficiency of the evidence supporting his conviction, our review is for correction of errors of law. *State v. Leckington*, 713 N.W.2d 208, 212-13 (Iowa 2006).

Finally, "[w]e review the district court's sentence for correction of errors at law."  *State v. Freeman*, 705 N.W.2d 286, 287 (Iowa 2005). Insofar as Bower presents constitutional issues related to his sentence, our review is de novo.  *State v. Mitchell*, 670 N.W.2d 416, 418 (Iowa 2003).

## V.  Analysis.

*A.    Constitutional challenges.*    The State convicted Bower for violating Iowa Code section 718.4.  Section 718.4 provides:  "Any person who willfully prevents or attempts to prevent any public officer or employee from performing the officer's or employee's duty commits a simple misdemeanor."  Iowa Code § 718.4.  We have said " 'statutes are cloaked with a presumption of constitutionality.' "  *State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005) (citations omitted).  Thus, Bower " 'bears a heavy burden, because [he] must prove the unconstitutionality beyond a reasonable doubt.' "  *Id.* (citations omitted).  In doing so, Bower is

required to refute every reasonable basis upon which we could declare the statute constitutional. *Id.* If we can construe a statute in more than one way, one of which is constitutional, we will adopt such a construction. *Id.*

The Due Process Clause of the United States Constitution provides the State shall not "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause prohibits vague statutes. *State v. Musser*, 721 N.W.2d 734, 745 (Iowa 2006). Article I, section 9 of the Iowa constitution states, "no person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. art. I, § 9. We have previously stated vagueness arguments also arise from this provision of the Iowa constitution. *State v. Todd*, 468 N.W.2d 462, 465 (Iowa 1991). Although we have considered the federal and state due process clauses to be identical in scope, import, and purpose, interpretations of the federal Due Process Clause are not binding on us when we are called upon to determine the constitutionality of Iowa statutes challenged under our own due process clause. *Callender v. Skiles*, 591 N.W.2d 182, 187 (Iowa 1999). Because Bower has not given us reason to interpret the federal and Iowa due process clauses differently, our discussion of the Due Process Clause of the Fourteenth Amendment is equally applicable to his Iowa constitutional claim.

Vague statutes offend several important principles. *Grayned v. City of Rockford,* 408 U.S. 104, 107-08, 92 S. Ct. 2294, 2298, 33 L. Ed. 2d 222, 227 (1972).

> First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.

Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to " 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked."

*Id.* at 108-09, 92 S. Ct. at 2298-99, 33 L. Ed. 2d at 227-28 (alterations in original) (footnotes omitted) (citations omitted). With these principles in mind, we now examine Bower's claims.

*1. Vague as applied.* Bower asserts section 718.4 is vague as applied under the state and federal constitutions. In determining whether the statute is vague as applied, "we focus on whether the defendant's 'conduct clearly falls "within the proscription of [section 718.4]." ' " *Musser,* 721 N.W.2d at 745 (citations omitted).

When interpreting statutes, we have said:

"The goal of statutory construction is to determine legislative intent. We determine legislative intent from the words chosen by the legislature, not what it should or might have said. Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used. Under the guise of construction, an interpreting body may not extend, enlarge or otherwise change the meaning of a statute."

*State v. Gonzalez,* 718 N.W.2d 304, 307-08 (Iowa 2006) (citation omitted). We look at a statute in its entirety and " 'we avoid interpreting a statute in such a way that portions of it become redundant or irrelevant.' " *Id.* at 308 (citation omitted). We search for an interpretation that is reasonable, best achieves the statute's purpose, and avoids absurd results. *Id.* We construe criminal statutes strictly with doubts resolved

in favor of the accused.  *Id.*  If a standard of conduct can be reasonably ascertained by referring to prior judicial decisions, similar statutes, the dictionary, or common generally accepted usage, the statute meets the requirements of due process.  *Id.* at 310.

Section 718.4 criminalizes conduct that "willfully prevents or attempts to prevent any public officer or employee from performing the officer's or employee's duty."  Iowa Code § 718.4.  "Willfully," as used in section 718.4, means intentionally, deliberately, and knowingly because preventing or attempting to prevent a public officer or employee from performing the officer's or employee's duty is commonly understood to be morally questionable, or an action unjustifiably endangering persons or property.  *See State v. Azneer*, 526 N.W.2d 298, 299 (Iowa 1995) (stating when criminalized conduct is inherently wrong, "willful" means "intentionally, deliberately, and knowingly").

We have not had the opportunity to define the term "prevent" as used in section 718.4.  The dictionary, however, contains several applicable definitions of the word "prevent," including "to deprive of power or hope of acting, operating, or succeeding in a purpose : frustrate, circumvent"; "to keep from happening or existing esp. by precautionary measures : hinder the progress, appearance, or fulfillment of : make impossible through advance provisions"; "to hold or keep back (one about to act) : hinder, stop"; "to act or come before"; "to make something impossible."  *Webster's Third New International Dictionary* 1798 (unabr. ed. 2002).

Finally, a police officer is a public officer.  Thus, section 718.4 criminalizes intentional conduct that hinders or attempts to hinder a police officer from performing the officer's duty.

Applying this construction of the statute to the facts, Bower's conduct clearly falls within the proscription of section 718.4. Although Bower argues the only thing he did that evening was to shout at Kolosik, we find Bower did more. In addition to shouting at Kolosik, Bower intentionally approached Kolosik and entered his personal space. Kolosik perceived Bower's actions as threatening. Bower's conduct was done intentionally to hinder or to attempt to hinder Kolosik from conducting a lawful investigation.

Section 718.4 gives fair warning that a person should not willfully hinder or attempt to hinder an officer from conducting a lawful investigation. Bower should have known that intentionally entering the personal space of an officer would hinder an officer from completing a lawful investigation. Consequently, section 718.4 is not vague as applied to Bower, who entered the personal space of Kolosik in a threatening manner while Kolosik was conducting a lawful investigation.

*2. Overbreadth.* Bower also asserts section 718.4 is overbroad. Normally a person lacks standing to make a facial challenge to a statute, if a statute can be constitutionally applied to that person's conduct. *Musser,* 721 N.W.2d at 746 n.7. A recognized exception to this rule allows First Amendment challenges to statutes based on overbreadth. *Los Angeles Police Dep't v. United Reporting Publ'g Corp.,* 528 U.S. 32, 38, 120 S. Ct. 483, 488, 145 L. Ed. 2d 451, 459 (1999). This exception is "deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising their right for fear of criminal sanctions provided by a statute susceptible of application to protected expression." *Id.* (citation omitted).

"[T]he overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible

applications of the law are substantial when 'judged in relation to the statute's plainly legitimate sweep.' " *Musser*, 721 N.W.2d at 746 (citation omitted). The Supreme Court has held that even a clear and precisely worded statute may nevertheless be overbroad if in its reach it prohibits constitutionally protected conduct. *Grayned*, 408 U.S. at 114, 92 S. Ct. at 2302, 33 L. Ed. 2d at 231. However, for a statute to be invalidated it must reach " 'a substantial amount of constitutionally protected conduct.' " *City of Houston v. Hill*, 482 U.S. 451, 458, 107 S. Ct. 2502, 2508, 96 L. Ed. 2d 398, 410 (1987) (citations omitted). A single impermissible application of a statute will not be sufficient to invalidate the statute on its face. *Id.*

Bower argues section 718.4 is overbroad because "it prohibits *any* interruption of official duties by *any* means." Bower asserts "it is well-settled that verbally preventing a public official from carrying out his or her duty is not sufficient to constitutionally criminalize speech." In making this argument, Bower relies on the Supreme Court's decision in *City of Houston v. Hill*. In *Hill*, while the police were investigating a situation, the defendant shouted, "Why don't you pick on somebody your own size?" *Id.* at 454, 107 S. Ct. at 2505, 96 L. Ed. 2d at 407. The City of Houston charged the defendant with violating its city ordinance making it "unlawful for any person to assault, strike or in any manner oppose, molest, abuse or interrupt any policeman in the execution of his duty, or any person summoned to aid in making an arrest." *Id.* at 455, 107 S. Ct. at 2505, 96 L. Ed. 2d at 408. Hill was acquitted of the charge. *Id.* at 454, 107 S. Ct. at 2505, 96 L. Ed. 2d at 407. Hill then brought a civil action in federal court for damages. *Id.* at 455, 107 S. Ct. at 2506, 96 L. Ed. 2d at 408. One of his claims in the civil action was that the ordinance was unconstitutional both on its face and as applied to him.

*Id.* In its analysis to determine whether the Houston ordinance was overbroad, the Supreme Court first noted the Texas Penal Code preempted most of the conduct prohibited by the Houston ordinance and the only part of the ordinance that was enforceable was the prohibition against verbally interrupting a police officer in the execution of his duty. *Id.* at 460-61, 107 S. Ct. at 2508-09, 96 L. Ed. 2d at 411. Because the enforcement of the ordinance was limited to verbal interruptions, the Supreme Court held the ordinance was overbroad for the reason that it "criminalizes a substantial amount of constitutionally protected speech, and accords the police unconstitutional discretion in enforcement." *Id.* at 466, 107 S. Ct. at 2512, 96 L. Ed. 2d at 415.

In an attempt to save the ordinance from this constitutional defect, the City argued the Supreme Court should abstain from deciding the case until the state court had a chance to construe the ordinance. *Id.* at 467, 107 S. Ct. at 2512, 96 L. Ed. 2d at 415-16. The Court refused to abstain, stating that the ordinance "cannot be limited to 'core criminal conduct' such as physical assaults or fighting words because those applications are pre-empted by state law." *Id.* at 468, 107 S. Ct. at 2513, 96 L. Ed. 2d at 416.

In applying the *Hill* analysis to the present case, we start with the premise that unlike the situation in *Hill*, this court has the power to construe state statutes narrowly to comply with the constitutional right of free speech. *Grayned,* 408 U.S. at 110, 92 S. Ct. at 2300, 33 L. Ed. 2d at 228-29. As we have said earlier in this decision, the conduct prohibited by section 718.4 encompasses only intentional conduct that hinders or attempts to hinder an officer from performing an officer's duty. Further, to avoid the risk of constitutional infirmity, we construe section 718.4 to prohibit only physical conduct and fighting words that

hinder or attempt to hinder an officer from performing an officer's duty. *See State v. Fratzke*, 446 N.W.2d 781, 784 (Iowa 1989) (defining fighting words as "those personally abusive epithets which 'by their very utterance inflict injury or tend to incite an immediate breach of the peace' " (citation omitted)). This construction is consistent with the intent of the legislature to criminalize conduct that prevents or attempts to prevent an officer from performing an officer's duty, without reaching a substantial amount of rights protected by the First Amendment. Accordingly, we conclude section 718.4 is not impermissibly overbroad when construed in this manner.

B. *Sufficiency-of-the-evidence challenge.* Bower claims there is insufficient evidence to support his conviction under section 718.4. He contends the State did not prove Kolosik was engaged in an official duty at the time of the altercation or that Bower's nonverbal conduct prevented Kolosik from carrying out his duties. We disagree.

In reviewing a sufficiency-of-the-evidence claim, " 'we view the evidence in the light most favorable to the State' " and determine whether substantial evidence supports the verdict. *State v. Hoskins*, 711 N.W.2d 720, 730 (Iowa 2006) (citation omitted). Evidence is substantial if a rational trier of fact could be convinced beyond a reasonable doubt that the defendant is guilty of the charged crime. *Id.* at 730-31. Under section 718.4, the State must prove four elements: "(1) [a]ny person; (2) [w]ho willfully prevents or attempts to prevent; (3) [a]ny public officer or employee; (4) [f]rom performing the officer's or employee's duty." *See* Iowa Code § 718.4; *State v. Jeffries*, 430 N.W.2d 728, 740 (Iowa 1988).

The question here is whether Bower willfully prevented or attempted to prevent Kolosik from performing his duty. First, viewing the evidence in the light most favorable to the State, a rational trier of

fact could be convinced beyond a reasonable doubt that Kolosik was performing a duty. Kolosik's testimony supports he was conducting an investigation involving Rummells and Coleman, despite Bower's testimony that Kolosik did not appear to be doing anything more than "shooting the breeze" and Coleman's testimony that Kolosik was "making small talk." *Cf. Shanahan*, 712 N.W.2d at 135 (explaining the jury may give a witness' testimony such weight as it thinks it should receive, as "[t]he function of the jury is to weigh the evidence and 'place credibility where it belongs' " (citation omitted)).

Second, viewing the evidence in the light most favorable to the State, a rational trier of fact could be convinced beyond a reasonable doubt Bower willfully prevented or attempted to prevent Kolosik from performing his duty. The "willfully" aspect was supported by Bower's testimony that he left his residence in order to go to the scene and intervene. The "prevented or attempted to prevent" aspect was supported by Kolosik's testimony that Bower told him "to get out of [his] area," and he "wasn't supposed to be there," as well as Kolosik's testimony that Bower entered his personal space and he felt threatened by Bower's conduct.

Therefore, there is sufficient evidence to support Bower's conviction under section 718.4.

C. *Increased sentence challenge.* Bower claims it is impermissible for the district court, acting as an appeals judge, to increase his sentence following his unsuccessful non-de novo appeal. His argument that increasing his sentence violates his due process rights is dispositive of the issue.

The Supreme Court has summarized a defendant's due process right of a "free and unfettered" appeal. *North Carolina v. Pearce,* 395 U.S.

711, 723-24, 89 S. Ct. 2072, 2080, 23 L. Ed. 2d 656, 668-69 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989). There the Supreme Court stated:

> It can hardly be doubted that it would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside. Where, as in each of the cases before us, the original conviction has been set aside because of a constitutional error, the imposition of such a punishment, "penalizing those who choose to exercise" constitutional rights, "would be patently unconstitutional." And the very threat inherent in the existence of such a punitive policy would, with respect to those still in prison, serve to "chill the exercise of basic constitutional rights." But even if the first conviction has been set aside for nonconstitutional error, the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be no less a violation of due process of law. "A new sentence, with enhanced punishment, based upon such a reason, would be a flagrant violation of the rights of the defendant." A court is "without right to . . . put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered. . . . [I]t is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice." "This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts."

*Id.* (alteration in original) (internal citations omitted) (footnotes omitted).

*Pearce* involved an appeal by two defendants. One defendant's conviction was reversed in a state court post-conviction proceeding while the other defendant's conviction was set aside in a state court coram-nobis proceeding. *Id.* at 713-14, 89 S. Ct. at 2074-75, 23 L. Ed. 2d at 662-63. On retrial, the court found both defendants guilty and gave both harsher sentences. *Id.* In holding the state court could not impose a harsher sentence on retrial, the Supreme Court stated, "[d]ue process of law [ ] requires that vindictiveness against a defendant for having

successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.* at 725, 89 S. Ct. at 2080, 23 L. Ed. 2d at 669. The court then held to ensure a defendant's due process rights are not violated on resentencing after a new trial, the due process clause only allows the judge in the second trial to impose a more severe sentence if the record contains reasons for the harsher sentence based on "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Id.* at 726, 89 S. Ct. at 2081, 23 L. Ed. 2d at 670.

A series of subsequent rulings by the Supreme Court limited the holding of *Pearce* and restricted the presumption of vindictiveness. One of the first decisions to make inroads into the doctrine announced in *Pearce* was *Colten v. Kentucky.* 407 U.S. 104, 115-16, 92 S. Ct. 1953, 1959-60, 32 L. Ed. 2d 584, 592-93 (1972). In *Colten,* the Supreme Court found under Kentucky's two-tiered court system, where the superior court judge conducts a de novo trial and imposes a more severe sentence than that imposed by the lower court judge, due process is not violated. *Id.* at 116, 92 S. Ct. at 1960, 32 L. Ed. 2d at 593. In limiting *Pearce's* application, the Supreme Court found a de novo review is more like a new trial. *Id.* at 116-18, 92 S. Ct. at 1960-61, 32 L. Ed. 2d at 593-94. Therefore, a defendant's due process rights are not violated because it cannot be assumed a court reviewing de novo will impute a harsher result than if the case was originally filed and tried in that de novo court. *Id.* We have applied this rule when the review is de novo and the district court finds the defendant guilty and sentences the defendant to a

harsher sentence than that of the lower court. *City of Cedar Rapids v. Klees*, 201 N.W.2d 920, 921 (Iowa 1972).[1]

Another decision limiting *Pearce's* application involved a retrial where the second jury sentenced the defendant to a harsher sentence than the first jury. *Chaffin v. Stynchcombe*, 412 U.S. 17, 28, 93 S. Ct. 1977, 1983, 36 L. Ed. 2d 714, 724 (1973). There the Supreme Court held the defendant's due process rights were not violated by the imposition of a harsher sentence so long as the second jury was not informed of the defendant's prior conviction and sentence, and based its sentencing decision on the evidence presented at the second trial. *Id.* at 27-28, 93 S. Ct. at 1982-83, 36 L. Ed. 2d at 723-24.

A third decision limiting *Pearce's* application involved a retrial where the judge sentenced the defendant to a harsher sentence than the jury gave in the first trial. *Texas v. McCullough*, 475 U.S. 134, 136, 106 S. Ct. 976, 977, 89 L. Ed. 2d 104, 109 (1986). There the Supreme Court held because the second sentence was determined by a trial judge who provided "an on-the-record, wholly logical, nonvindictive reason for the sentence" and "relied on the testimony of two new witnesses which [the judge] concluded 'had a direct effect upon the strength of the State's case at both the guilt and punishment phases of the trial[,]' " the defendant's due process rights were not violated by the imposition of a harsher sentence. *Id.* at 140, 143, 106 S. Ct. at 980-81, 89 L. Ed. 2d at 112-14.

Lastly, the Supreme Court analyzed a case where a defendant successfully overturned his guilty plea and proceeded to a trial. *Alabama*, 490 U.S. at 795, 109 S. Ct. at 2203, 104 L. Ed. 2d at 870. At

---

[1] At the time *Klees* was decided, the statute provided on appeal "[t]he cause shall stand for trial anew in the district court in the same manner that it should have been tried before [the lower court]." Iowa Code § 762.48 (1971), *repealed by* 1972 Iowa Acts ch. 1124, § 282.

trial, the same judge who took the plea imposed a greater sentence than that previously imposed after the plea. *Id.* The Supreme Court noted during a trial on the evidence a "judge may gather a fuller appreciation of the nature and extent of the crimes charged[ ]" from the evidence produced at trial than from the information he used to sentence the defendant after a plea. *Id.* at 801, 109 S. Ct. at 2206, 104 L. Ed. 2d at 874. The Court also noted the factors that may have indicated leniency to the judge after the plea may no longer be present after a trial on the merits. *Id.* The Supreme Court found so long as the judge can objectively justify the imposition of a harsher penalty, the imposition of a harsher sentence does not violate a defendant's due process rights. *Id.* at 802, 109 S. Ct. at 2206, 104 L. Ed. 2d at 874. This decision limited *Pearce's* presumption of vindictiveness to circumstances "in which there is a 'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Id.* at 799, 109 S. Ct. at 2205, 104 L. Ed. 2d at 873 (citation omitted). When there is not a reasonable likelihood that an increase in sentence is the product of actual vindictiveness, a defendant must prove actual vindictiveness. *Id.* at 799-800, 109 S. Ct. at 2205, 104 L. Ed. 2d at 873.

We have had an occasion to examine this body of jurisprudence in the context of a retrial, where a judge sentenced a defendant to a harsher sentence than the original judge did after the first trial. *State v. Mitchell*, 670 N.W.2d 416, 422 (Iowa 2003). There we summarized the law, stating the presumption of judicial vindictiveness does not apply " 'when a different judge sentences a defendant after a retrial, *and* that judge articulates logical, nonvindictive reasons for the sentence.' " *Id.* at 424 (citations omitted); *see also United States v. Anderson*, 440 F.3d 1013, 1016 (8th Cir. 2006) (stating there is no presumption of vindictiveness

"when a different judge imposes a more severe sentence during resentencing and the record contains non-vindictive reasons for the more severe sentence[ ]").

In applying these principles to the present case, it is first necessary to determine the review Bower received. The Iowa rules of criminal procedure govern the procedure when appealing a magistrate's decision. In this case, Bower appealed the magistrate's decision to the district court. The rules require the district court to decide the appeal on the record, if the court finds the record adequate to determine whether substantial evidence supports the findings of fact in the original proceeding. Iowa R. Crim. P. 2.73(3). If the record is adequate and substantial evidence supports the findings of fact, the findings are binding on the judge deciding the appeal. *Id.* If the court finds the record inadequate to determine whether the findings of fact in the original action are supported by substantial evidence, the judge may order presentation of further evidence on appeal.[2] *Id.* Additionally, "[t]he judge deciding the appeal may affirm, or reverse and enter judgment as if the case were being originally tried, or enter any judgment which is just under the circumstances." *Id.*

In Bower's appeal, the district court did not order any further evidence to be presented. Therefore, we assume the record was adequate for the court to determine whether substantial evidence supports the

---

[2] When before a magistrate, our rules of criminal procedure allow for a record to be made electronically or by minutes of testimony prepared by the magistrate if either party does not provide a court reporter at that party's expense. Iowa R. Crim. P. 2.67(9). The record could be inadequate if the recording is inaudible or the minutes are incomplete. Under these circumstances, the appeals judge could order further testimony, resulting in a different type of review.

findings of fact in the original proceeding. Consequently, the district court reviewed the magistrate's decision for correction of errors at law.

In making a correction-of-errors-at-law review, such as the district court did in this case, the reviewing court's function is to determine whether substantial evidence supports the findings made by the lower court, not whether the evidence might support different findings. *Fischer v. City of Sioux City*, 695 N.W.2d 31, 33-34 (Iowa 2005). Under its correction-of-errors-at-law review, the findings of the magistrate were binding on the district court. Iowa R. Crim. P. 2.73(3). The district court, acting as the reviewing court, has no authority to make new findings of fact. If substantial evidence exists to support the lower court's decision, the reviewing court must affirm the lower court decision. Accordingly, a review on the record is not equivalent to a proceeding where the appellate court makes its own factual determinations or receives additional evidence before announcing its sentence. Without the ability of the reviewing court to make new findings of fact there can be no objective basis in the appeal record for the appellate court to increase a defendant's sentence. Additionally, even if we were to conclude that Bower's non-de novo review was somehow equivalent to a retrial, the district court did not provide any "logical, nonvindictive reasons" for increasing Bower's sentence.

Under the decisions of the Supreme Court, a defendant's due process rights are not violated if a second court imposes a harsher sentence than the first court, so long as the second court reconsiders the evidence, finds its own facts, and provides logical non-vindictive reasons for imposing the harsher sentence. In the present case, the district court did not reconsider the evidence, make its own findings of fact, or provide the defendant with logical non-vindictive reasons for imposing a harsher

sentence.  Consequently, it was improper for the district court to impose a harsher sentence.[3]

**VI.  Disposition.**

Because Iowa Code section 718.4 is constitutional and there is sufficient evidence to support Bower's conviction under section 718.4, we affirm Bower's conviction.  We do find, however, that the district court's imposition of a harsher sentence violates his due process rights.  Consequently, we vacate the sentence of the district court and remand the case for the district court to enter judgment with the same sentence imposed by the magistrate.

**JUDGMENT OF CONVICTION AFFIRMED, SENTENCE VACATED, CASE REMANDED WITH DIRECTIONS.**

All justices concur except Hecht and Appel, JJ., who take no part.

---

[3] This conclusion is consistent with our state's public policy governing resentencing on appeals from the district court to our appellate courts.  The Code provides in an appeal from the district court an appellate court may reduce punishment on appeal, but may not increase it.  Iowa Code § 814.20; *see also State v. Draper*, 457 N.W.2d 600, 606 (Iowa 1990) (stating "[a]t most, section 814.20 might preclude us from increasing a sentence imposed by the district court in cases where the district court's sentence is legal").