# IN THE COURT OF APPEALS OF IOWA

No. 16-1241
Filed September 13, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BRICE TURNER,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Marshall County, Kim M. Riley, District Associate Judge.


        Brice Turner appeals from the judgment entered following a verdict of guilty on charges of eluding and operating while intoxicated.  **AFFIRMED.**



        Harry L. Haywood III of Haywood Law Office, Eldora, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.



        Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

Brice Turner appeals from the judgment entered following a verdict of guilty on charges of eluding and operating while intoxicated (OWI). He argues his constitutional rights were violated and insufficient evidence supports his convictions. Because Turner has failed to show a violation of his constitutional rights on any issue properly before us and sufficient evidence supports his convictions, we affirm.

### I. Background Facts and Proceedings.

Marshalltown Police Department Sergeant Kiel Stevenson was on duty when he saw Turner drive a Toyota 4Runner into the entrance of a park just after midnight on August 30, 2015. Once inside the park, the Toyota turned and headed off the paved area and onto the grass. At that time, Sergeant Stevenson noticed the Toyota's taillights were not illuminated.[1] The Toyota proceeded past a tree before turning around and returning to the pavement.

---

[1] At trial, Sergeant Stevenson testified the vehicle's headlights were functioning but there were "no taillights on the back of the vehicle." In its order denying Turner's motion to suppress, the trial court found "it is clear from review of the [patrol car's dashboard camera] recording that the taillights were not functioning on August 30, 2015, at the time of the stop. The headlights and brake lights were fully functioning, however." Turner alleges this finding is erroneous, alleging the recording "clearly shows the lights shining from the rear [of his] vehicle."

From our review of the recording, it appears the only time Turner's rear vehicle lights were illuminated occurred during braking. Regardless, the vehicle's entrance into the park after hours provided sufficient justification for initiating a traffic stop. *See* Code of Ordinances, City of Marshalltown, Iowa, § 21.5-11 (2013) (stating it is a municipal infraction to be on park premises between the hours of 11:30 p.m. [and] 6:30 a.m.); *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002) (noting the test for whether reasonable suspicions exists to initiate a traffic stop is an objective one and the State is not limited to the investigating officer's stated reasons in justifying it; the question is whether the totality of the circumstances confronting the officer based on the information available at that time provide a reasonable suspicion for initiating an investigatory stop).

Sergeant Stevenson activated his patrol vehicle's overhead lights to initiate a traffic stop, but Turner maneuvered the Toyota in front of and past Stevenson's vehicle without stopping. As the Toyota passed, the patrol vehicle's headlights shined inside to illuminate Turner and his passenger. The passenger looked directly at the patrol car, but Turner kept his eyes ahead and avoided looking over, even when Sergeant Stevenson sounded the patrol vehicle's horn.

Turner exited the park and headed down Woodland Street while Sergeant Stevenson followed in his patrol vehicle with its overhead lights and sirens activated. Eventually, Turner drove onto a residential driveway, across a lawn, and into the parking lot of T.C.'s Pub before stopping.

Sergeant Stevenson stopped his vehicle directly behind the Toyota and left the overhead lights activated as he exited. The sergeant yelled at the Toyota's occupants, "Hands up!" Although Sergeant Stevenson ordered Turner to remain in the vehicle, Turner opened his door. Sergeant Stevenson continued ordering Turner to remain in the vehicle and not move while Turner exited with his hands over his head. The sergeant yelled, "Stop right now!" and "Don't move!" while Turner stepped to the side and closed the driver's door with one hand. Turner then remained standing with his back to the patrol car and his arms stretched over his head as other law enforcement officers arrived at the scene.

Turner continued to stand for a period of time before folding his hands behind his head and, without prompting, beginning to go down to his knees while Sergeant Stevenson yelled at Turner to stand up. Turner then stood, lurching slightly as he rose with his hands still clasped behind his head. When Sergeant Stevenson told Turner to walk backward toward the sound of his voice, Turner

complied by taking small steps backward until the sergeant told him to "stop right there." Another officer then took over, directing Turner to "step back to [her] voice," and Turner took a few sideways steps before continuing backward.

Sergeant Stevenson believed Turner was under the influence of alcohol after smelling "a strong odor of alcohol emitting from him" and observing his "red, watery" eyes, in addition to Tuner's "overall demeanor, slow reaction time, . . . [and] inability or unwillingness to answer basic questions, similar to other [intoxicated] people that [Sergeant Stevenson had] witnessed." While transporting Turner to the police station, Officer Stephen Sheets also smelled "the moderate odor of alcohol on [Turner's] breath" and observed that Turner was "unsteady on his feet," had "kind of a stagger," "had watery eyes," and "would occasionally slur words."

Once at the police station, Officer Sheets attempted to administer the horizontal gaze nystagmus test to Turner. The test showed indications that Turner was intoxicated before Turner told the officer to "forget it" and refused further attempts to complete the test. Officer Sheets asked Turner to complete other field sobriety tests, but Turner was uncooperative, stating, "I can't count backward and cannot recite my ABCs." He also told the officer, "No foot tests. I can't do that shit when I'm totally sober" and claimed his ankle was broken. Although Turner would not perform the tests, he also claimed he was not refusing to take them but was "tired." Turner also refused to take a preliminary breath test, telling Officer Sheets, "You are not putting anything in my mouth, no matter how much you want to. I am tired and want to go to bed."

Officer Sheets invoked implied consent and requested that Turner provide him with a breath sample. Turner called his wife and spoke to her at length before Officer Sheets asked Turner again whether he wanted to take the breath test. Turner replied, "I'm tired. I can't count backwards." Officer Sheets marked Turner down as having refused the test.

Officer Sheets read Turner his rights, and Turner consented to answer some questions. During the interview, Turner denied that he had been driving the Toyota even though he exited the driver's side of the vehicle. Turner also denied that he had been drinking alcohol.

The State charged Turner with OWI and eluding,[2] and Turner pled not guilty. He filed a motion to suppress the evidence, arguing law enforcement lacked probable cause to stop and search his vehicle and to arrest him. The district court overruled the motion, as well as Turner's motion to reconsider.

Turner waived his right to a jury trial. At the bench trial, Turner testified that he had consumed three twelve-ounce beers over the course of several hours on the day in question. He stated he and his wife had been at T.C.'s Pub when he and his passenger left the pub in the Toyota—a used vehicle his wife had recently acquired—to check a fluid leak. Turner claimed he did not stop for Sergeant Stevenson because he wanted to go to a more populated area due to his extreme fear of being shot by a police officer.

The trial court found Turner guilty of both eluding and OWI. After his motion for new trial was denied, Turner appealed his convictions.

---

[2] The State also charged Turner with possession of a controlled substance and drug paraphernalia, but the trial court acquitted Turner on both counts.

## II. Constitutional Challenges.

Turner challenges his convictions on the grounds that the State violated several of his constitutional rights. We review his constitutional claims de novo. *See State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013).

### A. Vagueness.

Turner first argues the eluding statute is unconstitutionally vague. He claims he preserved error on this issue by raising it to the district court during trial.

Even assuming a claim of constitutional vagueness could be raised for the first time at trial, *see* Iowa R. Crim. P. 2.11(2)(a), (b) (requiring defenses and objections based on "defects in the institution of the prosecution" or "defects in the indictment or information" to be raised prior to trial), Turner failed to preserve error on the specific claim he presents on appeal. During closing argument, Turner's counsel stated the question the trial court needed to determine was: "Is it [up to] the person that is being stopped to determine when it is safe to stop? Or is it [for] the officer to determine . . . ?" Counsel directed the court to *State v. Tubbs*, No. 10-0758, 2011 WL 768756, at *2-3 (Iowa Ct. App. Mar. 7, 2011), arguing the jury instructions in *Tubbs* that defined the term "willfully" in the eluding statute provide "an excellent definition." Nowhere in the record does counsel argue or imply the eluding statute is unconstitutionally vague. Furthermore, the trial court never ruled on the constitutionality of the statute. Accordingly, Turner has failed to preserve this claim for our review. *See State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008) ("Generally, we will only review an issue raised on appeal if it was first presented to and ruled on by the district

court."); *see also State v. Krogmann*, 804 N.W.2d 518, 523–24 (Iowa 2011) (finding defendant failed to preserve error on constitutional claims where defendant failed to raise those constitutional arguments in district court and failed to request a ruling on an issue properly raised).

### B. Unreasonable Search and Seizure.

Turner also argues the district court erred in denying his motion to suppress evidence discovered in violation of his constitutional right to remain free from unreasonable searches and seizures. Specifically, Turner alleges none of his actions following the traffic stop raised a reasonable suspicion that he might have been intoxicated. He argues the officers therefore lacked probable cause to investigate him for OWI.

Reasonable suspicion for investigative purposes exists "when articulable facts and all the circumstances confronting the officer at the time give rise to a reasonable belief that criminal activity may be afoot." *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015). Whether reasonable suspicion exists is determined after considering all the circumstances together. *See id.*

In his motion to suppress, Turner alleged there was no probable cause to stop his vehicle, to arrest him for eluding, and to search and seize his vehicle. He also alleged that, "without conducting preliminary sobriety tests at the scene, the court should determine no probable cause existed for the actions at the Police Department." However, in both his brief in support of the motion and at the hearing on his motion to suppress, defense counsel's argument focused on whether there was reasonable justification for the traffic stop, probable cause for the eluding arrest, or reason to impound and search his vehicle. Likewise, the

trial court's ruling denying Turner's motion to suppress focused its analysis on these issues. Although the trial court did not provide an analysis of the issue, it did state in its summary that "[o]nce the vehicle was stopped, signs of intoxication were evident, and [Turner] was properly taken into custody to continue the operating while intoxicated investigation." The State argues this is insufficient to preserve error.

Assuming error was preserved, the officers had a reasonable suspicion to investigate whether Turner committed OWI. After taking Turner into custody for eluding, both Sergeant Stevenson and Officer Sheets smelled the odor of an alcoholic beverage emanating from him. They also observed Turner to have watery eyes and believed he was intoxicated based on his demeanor and speech. When asked why Turner did not stop when Sergeant Stevenson initiated his overhead lights and sirens, Turner's passenger indicated the reason was "drinking," stating that an OWI arrest "cost you a lot of money." Coupled with Turner's behavior at the park, his failure to stop for Sergeant Stevenson, his act of driving through a lawn, his unwillingness or inability to follow the officer's commands to remain in his vehicle and not move, and the manner of his movements, provided a sufficient basis for Turner's continued detention to investigate whether he committed OWI.

### C. Due Process Violation.

Finally, Turner argues the trial court erred in denying his motions to suppress and reconsider, his objections during trial, and his motion for new trial because the State violated his due process rights when the officers failed to advise him of his *Miranda* rights at the scene. Turner raised this issue for the

first time in his motion for new trial. The trial court determined that there was no need to provide Turner with *Miranda* warnings at that time because there was no custodial interrogation at the scene.

Turner's claim concerns the admissibility of statements he made following the traffic stop. A defendant must raise objections to evidence, even those based on constitutional grounds, at the earliest opportunity. *See State v. Yaw*, 398 N.W.2d 803, 805 (Iowa 1987). Turner failed to make a timely objection to the evidence he alleges was discovered in violation of his due process rights, and therefore, he has waived error.

### III. Sufficiency of the Evidence.

Turner also challenges the sufficiency of the evidence supporting his convictions for eluding and OWI. We review these claims for correction of errors at law. *See State v. Hearn*, 797 N.W.2d 577, 579 (Iowa 2010).

The trial court's findings of guilt are binding on us if they are supported by substantial evidence. *See id.* Evidence is substantial if it would convince a rational factfinder that the defendant is guilty beyond a reasonable doubt. *See id.* at 579–80. In determining whether substantial evidence supports a conviction, we view the evidence in the light most favorable to upholding the trial court's decision. *See id.*

### A. Eluding.

Iowa Code section 321.279(1) (2015) states the driver of a motor vehicle commits the serious misdemeanor of eluding "if the driver willfully fails to bring the motor vehicle to a stop or otherwise eludes or attempts to elude a marked official law enforcement vehicle driven by a uniformed peace officer after being

given a visual and audible signal to stop." Turner claims there is insufficient evidence to show he acted "willfully," arguing he only continued driving to get to a well-lit area with witnesses due to fear for his personal safety, not because he was taking evasive action.

The trial court found Turner's act of failing to stop for Sergeant Stevenson was willful because it was "intentional and deliberate, not the product of mistake or accident." Turner argues the trial court used the wrong definition of the term "willful." Our supreme court has noted there are two types conduct our statutes criminalize: conduct that is inherently wrong (*malum in se*) and conduct that is wrong because it is prohibited by statute (*malum prohibitum*). *See State v. Azneer*, 526 N.W.2d 298, 299 (Iowa 1995). For crimes considered to be inherently wrong, conduct is willful if done "intentionally, deliberately, and knowingly." *Id.* With regard to crimes involving conduct that is wrong only because it is prohibited, the conduct must be shown to be both voluntary and an "intentional violation of a known legal duty" in order to be considered willful. *Id.* Turner alleges the act of eluding is not immoral by its nature and, therefore, his act was not willful because he reasonably thought he was not violating a legal duty by driving to a well-lit area before stopping.

In *State v. Bower*, 725 N.W.2d 435, 442 (Iowa 2006), the supreme court considered the meaning of the term "willful" as it applied to Iowa Code section 718.4, which criminalizes conduct that "willfully prevents or attempts to prevent any public officer or employee from performing the officer's or employee's duty." The court held the definition of "willfully" used in that section "means intentionally, deliberately, and knowingly because preventing or attempting to prevent a public

officer or employee from performing the officer's or employee's duty is commonly understood to be morally questionable, or an action unjustifiably endangering persons or property." *Bower*, 725 N.W.2d at 442. In other words, hindering a police officer from performing the officer's duty is morally or inherently wrong. *See id.*

The conduct at issue in *Bower* is substantially similar in nature to the conduct criminalized by the eluding statute. Applying the holding of *Bower* to the case at bar, we find the act of eluding is willful if done "intentionally, deliberately, and knowingly."

The State was not required to show Turner *intended to violate the statute*; rather, it only needed to show Turner's failure to stop—*his action—was intentional, deliberate, and knowing*. Turner testified he chose not to stop because he feared what could occur during the traffic stop. By his own testimony he intentionally, deliberately, and knowingly did not stop. It is clear Turner failed to stop for Sergeant Stevenson and his decision to continue driving was intentional, deliberate and knowing.

Substantial evidence supports a finding that Turner intentionally, deliberately, and knowingly refused to stop when Sergeant Stevenson activated his overhead lights and sirens to initiate a traffic stop. Because sufficient evidence supports the finding of Turner's guilt on the eluding charge, we affirm.

**B. Operating While Intoxicated.**

A person commits OWI if, while operating a motor vehicle, the person is under the influence of an alcoholic beverage or other drug. *See* Iowa Code § 321J.2(1)(a). "A person is 'under the influence' when the consumption of

alcohol affects the person's reasoning or mental ability, impairs a person's judgment, visibly excites a person's emotions, or causes a person to lose control of bodily actions." *State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004). A defendant's acknowledgment of alcohol consumption prior to driving, coupled with observed signs of alcohol intoxication after the defendant's arrest, is sufficient to support an OWI conviction. *See id.*

In finding Turner guilty on the OWI charge, the court stated:

> In light of [Turner]'s appearance and conduct as shown in State's Exhibits 1 and 2, it is very unlikely that [Turner] consumed only three beers over [a] six-hour period as he testified. The court rejects [Turner]'s claims in that regard. He testified he had been at T.C's Pub for more than six hours. In general, the court found [Turner]'s overall testimony to be lacking in credibility. For example, [Turner]'s testimony that he and his passenger took the vehicle to the park to test it for brake or steering fluid leaks is somewhat incredulous, given the late hour and the darkness. The State proved all elements of operating while intoxicated beyond a reasonable doubt. Ample evidence exists that [Turner] had consumed alcohol and that as a result, his judgment was impaired as evidenced by his action in attempting to elude Sergeant Stevenson. In addition, his reason and mental ability were affected as evidenced by his inability to communicate with and respond appropriately to law enforcement officers. Finally, there is evidence that he had lost control of bodily actions and motions at least to some extent, in that he was unsteady on his feet and showed signs of nystagmus.

Turner claims there is insufficient evidence to support his OWI conviction. Specifically, he claims the evidence is insufficient to show beyond a reasonable doubt that he was intoxicated. He disputes the finding that his movements and speech showed indicia of intoxication and claims the finding that he "could not follow simple instructions" is a result not of intoxication but his inability to hear those instructions because of "the cacophony of screaming officers, barking dog, and squelching radios." Although Turner offers a different explanation for his

inability to follow instructions during the traffic stop, intoxication is an equally likely explanation.

The question of whether Turner showed signs of intoxication in his movements, speech, and conduct during the traffic stop is largely one of credibility. When considering the sufficiency of the evidence to uphold a verdict, we defer to the trier of fact's credibility determinations. *See State v. Weaver*, 608 N.W.2d 797, 804 (Iowa 2000) (noting the trier of fact is in a better position to assess credibility). The trial court here specifically found Turner's testimony was not credible, relying instead on the observations made by Sergeant Stevenson and Officer Sheets.

Turner also argues the manner in which he was driving belies the claim he was intoxicated because he was driving at a consistent and steady speed without swerving and drove to the closest public location before stopping. However, Turner's acts of driving off the paved area at the park, failing to stop for Sergeant Stevenson, and driving across a lawn to return to T.C.'s Pub run contrary to his assertion.

Viewing the evidence in the light most favorable to upholding the trial court's decision and deferring to the trial court's credibility determinations, we conclude substantial evidence supports a finding that Turner was intoxicated. Turner failed to stop for Sergeant Stevenson. He drove across a lawn instead of following a street to the pub even though he knew a law enforcement officer was observing him. The officers who interacted with Turner made observations about his appearance, conduct, and odor that support a finding of intoxication. Videotape evidence showing Turner's conduct following the traffic stop supports

their observations.   Finally, Turner's own statements at the police station are evidence that he was intoxicated.

Because sufficient evidence supports Turner's OWI conviction, we affirm.

**AFFIRMED.**