# IN THE SUPREME COURT OF IOWA

No. 11–1616

Filed March 21, 2014

**STATE OF IOWA,**

Appellee,

vs.

**RANDY MITCHELL COPENHAVER,**

Appellant.

___

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, Sean W. McPartland and Mitchell E. Turner, Judges.

A defendant seeks further review of a court of appeals decision affirming his convictions for two separate robberies. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and David Arthur Adams, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary A. Triick and Kevin R. Cmelik, Assistant Attorneys General, and Gerald A. Vander Sanden, County Attorney, for appellee.

**WIGGINS, Justice.**

The defendant entered a bank, approached two separate tellers, and demanded each teller give him money from their cash drawers. The State charged the defendant with two separate robberies, and the jury found him guilty of the two robberies. The defendant appealed, claiming that if a robbery took place, only one robbery occurred. He further claimed substantial evidence did not support two robbery convictions. He also raises additional matters in his pro se brief. We transferred the case to the court of appeals. The court of appeals affirmed his convictions. The defendant asked for further review, which we granted.

On further review, we agree with the court of appeals resolution of the pro se issues and let its decision stand as our final decision on the issues the defendant raised in his pro se brief. Additionally, we find substantial evidence supports the defendant committed two separate and distinct robberies. Therefore, we affirm the decision of the court of appeals and the judgment of the district court.

## I. Background Facts and Proceedings.

On February 11, 2010, a person entered the Community Savings Bank branch office on Mount Vernon Road in Cedar Rapids. The person was wearing a mask. There was only one teller on the teller line, Jamie Kasmiskie. Another teller and two bank officers were also present in the bank. The person approached Kasmiskie and passed her a note. The note said, "this is a robbery" and "100's, 50's, and 20's." The person also spoke to Kasmiskie, saying, "This is a robbery. Give me your money." The person further stated, "Don't hit any buttons."

Kasmiskie testified her first thought was not to panic. She testified she did not know what was going to happen. Kasmiskie felt her adrenaline pumping, her legs and hands were shaking, and after the

incident she thought she might vomit. She did not feel the person was aggressive towards her, nor did the person imply or threaten a weapon. However, Kasmiskie feared some kind of physical contact if she did not comply, because the person was leaning closer to her than any ordinary customer would have been.

Kasmiskie testified she began handing the money to the person. When Kasmiskie finished handing over the twenties, she waited to see if the person was going to leave. The person indicated to her that she should continue to hand over the money. Kasmiskie gave the suspect "bait money" of one hundred dollars in twenties. Bait money is money the bank is able to track because the bank has kept a record of the money, such as the serial numbers on the bills.

Another teller, Sandra Ries, noticed Kasmiskie and the person and went out to her window, which was next to Kasmiskie's window. The suspect then went to Ries's window and demanded money from her. The person said, "Give me your f_____ 50's and 100's," and "I want all of your 100's and 50's." Ries indicated she did not have any more of those bills in her drawer, and the person said, "Then, well, give me your 20's also." Ries described the voice as very demanding in tone. She further stated the person wore gloves and made a gesture like the person could have a weapon. The person's gloved hand touched Ries's nose a couple times.

Ries did not see a weapon, but did not know if the person had one. She testified she was scared because the person could have had a hidden weapon. Ries stated the suspect never threatened her, and the touching of her nose did not appear to be intentional. Ries did not hand over any bait money. The amount taken from the bank that day was $6852. Copenhaver was subsequently apprehended.

## II. Proceedings.

On February 25, the State charged Copenhaver with two counts of robbery in the second degree in violation of Iowa Code sections 711.1 (2009) and 711.3 and one count of theft in the second degree in violation of Iowa Code sections 714.1 and 714.2. Copenhaver filed a motion for adjudication of law points. Copenhaver argued the two counts of robbery should have been charged as a single offense. The court denied the motion. At trial, the jury found Copenhaver guilty on all three counts. The trial court sentenced Copenhaver to two consecutive ten year terms on each of the robbery charges and a concurrent five year term on the theft charge.

Copenhaver filed a notice of appeal. We transferred the case to our court of appeals. The court of appeals affirmed Copenhaver's convictions. We granted further review.

## III. Issues.

Copenhaver's counsel raised two issues in his brief: whether the district court imposed an illegal sentence by failing to combine the two convictions for robbery in the second degree into a single count, and whether the district court erred in finding there was substantial evidence for the jury to find Copenhaver committed assaults against each bank teller. In his pro se brief, Copenhaver raised additional issues.

When deciding a case on further review, "we have the discretion to review all or some of the issues raised on appeal." *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). In exercising our discretion, we choose only to review the issues raised by Copenhaver's counsel in counsel's original brief. Accordingly, the court of appeals decision will be our final decision on the issues Copenhaver raised in his pro se brief.

**IV.  Whether the District Court Imposed an Illegal Sentence By Failing to Combine the Two Convictions for Robbery in the Second Degree into a Single Count**.

Copenhaver frames this issue in his brief as an issue of merger. He argues the failure to merge the two robbery convictions into one offense violates the Double Jeopardy Clause of the United States Constitution.[1]  This argument is misplaced.  The defendant in *State v. Ross* made the same argument.  845 N.W.2d 692, 701 (Iowa 2014).  We have limited our merger doctrine to double jeopardy claims involving lesser-included offenses.  *Id.*  Accordingly, we recognize Copenhaver as using the word "merger" in his brief in its general definition of "[t]he act or an instance of combining or uniting" to ask us to combine his convictions.  *See Black's Law Dictionary* 1078 (9th ed. 2009).

An illegal sentence is a sentence that is not permitted by statute. *State v. Woody*, 613 N.W.2d 215, 217 (Iowa 2000).  If the legislature criminalizes two separate and distinct acts, separate sentences on each act are not illegal.  *State v. Jacobs*, 607 N.W.2d 679, 688 (Iowa 2000). Another way to ask what conduct the legislature criminalized is to ask what unit of prosecution the legislature intended in enacting the statute. Therefore, the first step in our analysis is to determine the legislature's intent for the unit of prosecution for Iowa Code section 711.1.  *See Ross*, 845 N.W.2d at 702.

**A.  Unit of Prosecution for Robbery.**  Determining legislative intent raises issues of statutory interpretation; thus, our review is for correction of errors at law.  *State v. Allen*, 708 N.W.2d 361, 365 (Iowa 2006).

The robbery statute in pertinent part provides:

---

[1]The Fifth Amendment to the United States Constitution provides in relevant part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.

> A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stolen property:
>
> 1. Commits an assault upon another.
>
> 2. Threatens another with or purposely puts another in fear of immediate serious injury.
>
> 3. Threatens to commit immediately any forcible felony.

Iowa Code § 711.1. Thus, the legislature has defined the unit of prosecution for robbery based upon the actions of the defendant.

The first element relevant to the facts of this case requires the defendant to have the intent to commit a theft. The Code defines theft as "when the person . . . [t]akes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof." *Id.* § 714.1. The second element of robbery requires the defendant to do

> *any* of the following acts to assist or further the commission of the intended theft . . .:
>
> 1. Commit[] an assault upon another.
>
> 2. Threaten[] another with or purposely put[] another in fear of immediate serious injury.
>
> 3. Threaten[] to commit immediately any forcible felony.

*Id.* § 711.1 (emphasis added). If the State can prove these two elements beyond a reasonable doubt, the defendant has committed the crime of robbery.

The parties disagree on the proper interpretation of the word "any" in the statute. Copenhaver argues the use of the word "any" in the statute is plural and meeting any one or more of the three factors under

Iowa Code section 711.1 constitutes only one offense; therefore, the number of assaults is not determinative as to whether there is more than one robbery. Copenhaver relies on *State v. Kidd*, 562 N.W.2d 764 (Iowa 1997). The State argues the use of the word "any" allows multiple offenses because we previously interpreted the word "any" to allow charges for multiple offenses in *State v. Constable*, 505 N.W.2d 473 (Iowa 1993).

In *Kidd*, the defendant possessed three sawed-off shotguns bundled together in his home, and the State charged him with three separate counts of unauthorized possession of an offensive weapon. 562 N.W.2d at 764–65. The relevant statute prohibited the knowing "possess[ion of] an offensive weapon." *Id.* at 765 (quoting Iowa Code § 724.3 (1995)). We analyzed the use of the word "an" in the statute and determined the ordinary meaning referred to possession of a single weapon. *Id.* Thus, we found the possession of each weapon to be a separate offense. *Id.* at 765–66. In reaching this conclusion, we cited *United States v. Kinsley*, 518 F.2d 665, 670 (8th Cir. 1975), to note that a statute with the language "any firearm" only allowed the singular act of possessing four firearms to be one offense. *Id.* at 766.

In *Constable*, the defendant argued the trial court violated his double jeopardy rights by allowing sentencing of five counts under Iowa Code section 709.3(2), sexual abuse in the second degree. 505 N.W.2d at 474. There were only two victims in *Constable*, but the State charged the defendant with two counts for one victim and three counts for the other victim. *Id.* at 475. The statute at issue required the person to commit sexual abuse as defined in Iowa Code section 709.1. *Id.* (citing Iowa Code § 709.3(2) (1991)). Section 709.1 defined sexual abuse as "any sex act which (1) is done by force or against the will of one participant; (2) is

performed with one participant who lacks ability to consent; or (3) is performed with a child." *Constable*, 505 N.W.2d at 477 (citing Iowa Code § 709.1). We determined any single physical contact was a *separate act* sufficient to meet the definition of "sex act." *Id.* at 477–78. Therefore, when the defendant engaged in five distinct acts of physical contact, each act alone was sufficient to charge the defendant with a count of sexual abuse, and the State did not violate the defendant's double jeopardy protection. *Id.* at 478.

We think both Copenhaver's and the State's arguments are relevant to this case. If a defendant intends to commit only one theft, and the defendant does one or more of the following—commits an assault upon another, threatens another with or purposely puts another in fear of immediate serious injury, or threatens to commit immediately any forcible felony—only one robbery has occurred. This is true even if the defendant commits multiple assaults or a single assault on one person and threatens other persons with or purposely puts another in fear of immediate serious injury while intending to commit a single theft. We find this to be the unit of prosecution for robbery.

We reach this conclusion because the legislature requires the defendant to intend to commit a theft accompanied by any of the acts listed in the statute. If the defendant intends to commit only one theft, there can only be one robbery no matter how many assaults occur while the defendant intends to commit the theft. Thus, the word "any" as used in section 714.1 is consistent with the *Kidd-Kinsley* analysis we applied in *Kidd.*

On the other hand, the *Constable* decision determined when separate acts occurred under a criminal statute. There, we found the legislature intended the unit of prosecution for sexual abuse under Iowa

Code section 709.1 (1991) to be each act of physical conduct. *Constable,* 505 N.W.2d at 478. Thus, multiple acts can constitute separate and distinct criminal offenses. Accordingly, if a defendant intends to commit two separate and distinct thefts, and the defendant accompanies each intended theft with one or more of the following—commits an assault upon another, threatens another with or purposely puts another in fear of immediate serious injury, or threatens to commit immediately any forcible felony—the defendant has committed two separate robberies. This result is consistent with *Constable,* where we determined the legislative intent was to criminalize each act of physical conduct.

In summary, the unit of prosecution for robbery requires the defendant to have the intent to commit a theft, coupled with any of the following—commits an assault upon another, threatens another with or purposely puts another in fear of immediate serious injury, or threatens to commit immediately any forcible felony. Here, the State was required to prove the defendant had the intent to commit two separate and distinct thefts, with each theft accompanied by any of the actions contained in Iowa Code section 711.1 (2009), to support two convictions of robbery.

**B. Whether the District Court Erred in Finding There Was Substantial Evidence for the Jury to Find Copenhaver Had the Intent to Commit Two Separate and Distinct Thefts.** We review a sufficiency-of-evidence claim for correction of errors at law. *State v. Thomas,* 561 N.W.2d 37, 39 (Iowa 1997). The court considers all the evidence presented at trial and views the evidence in the light most favorable to the state. *State v. Robinson,* 288 N.W.2d 337, 340 (Iowa 1980); *see also State v. Bower,* 725 N.W.2d 435, 444 (Iowa 2006). The verdict is supported by substantial evidence when the evidence could

convince a rational trier of fact the defendant is guilty beyond a reasonable doubt. *Bower*, 725 N.W.2d at 444.

In *Ross*, we set forth the factors we consider to determine if substantial evidence supports defendant's conduct as separate and distinct acts or one continuous act. 845 N.W.2d at 705. In *Ross* we stated:

> These factors are (1) the time interval occurring between the successive actions of the defendant, (2) the place of the actions, (3) the identity of the victims, (4) the existence of an intervening act, (5) the similarity of defendant's actions, and (6) defendant's intent at the time of his actions.

*Id.*

Applying these factors in this case, Copenhaver approached each teller individually, leaving an interval of time between each act. He did not stay in one place, but approached each teller at her window. Finally, we note the intervening act of the second teller, Ries, coming to her window after the first teller, Kasmiskie, gave Copenhaver money from her cash drawer.

Copenhaver argues there was only one victim, the bank, so there could only be one robbery. We do not agree with this argument. The legislature defined theft as "when the person . . . [t]akes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof." Iowa Code § 714.1. Each teller had possession of a bank drawer. Thus, each teller had possession of the property of the bank. When Copenhaver approached each teller, he intended to take possession or control of the bank's property in the possession of each teller.

These factors cause us to conclude the record contains substantial evidence Copenhaver had the intent to commit two separate and distinct

thefts.[2]  Therefore, we find Copenhaver had the intent to commit two thefts as defined by the legislature.  *See People v. Scott*, 200 P.3d 837, 841–43 (Cal. 2009) (finding the statutory language of "possession of another" included constructive possession for the crime and thus, a defendant could commit three robberies against three employees when the three employees had constructive possession of the employer's money); *People v. Borghesi*, 66 P.3d 93, 103 (Colo. 2003) (deciding under a statute that required the "presence of another," two clerks had sufficient control over the store property to support two robbery convictions); *Brown v. State*, 430 So. 2d 446, 447 (Fla. 1983) (finding two robberies when a defendant took money from two separate employees at

---

[2]Although Copenhaver did not argue the applicability of the single-larceny rule, the single-larceny rule does not affect our result.  Prior to the adoption of our present criminal code, we recognized the single-larceny rule.  *State v. Sampson*, 157 Iowa 257, 263, 138 N.W. 473, 475 (1912).  The single-larceny rule provides the theft of property belonging to two different persons at the same place and at the same time constitutes one single larceny.  *Id.*  In 1976, the legislature adopted a new criminal code.  Kermit L. Dunahoo, *The New Iowa Criminal Code*, 29 Drake L. Rev. 237, 240 (1979–1980).  In adopting the new code, the legislature defined the crime of theft.  1976 Iowa Acts ch. 1245, ch. 1, § 1401 (codified at Iowa Code § 714.1 (1979)).  The legislature also added the following language to our criminal law:

> The value of property is its normal market or exchange value within the community at the time that it is stolen.  If money or property is stolen by a series of acts from the same person or location, or from different persons by a series of acts which occur in approximately the same location or time period so that the thefts are attributable to a single scheme, plan or conspiracy, such acts may be considered a single theft and the value may be the total value of all the property stolen.

*Id.* § 1403 (codified at Iowa Code § 714.3 (1979)).  Despite subsequent minor amendments, Iowa Code section 714.3 remains substantially the same.  *See* Iowa Code § 714.3 (2009).  This change to the Code gives the state the discretion to charge a defendant with multiple crimes in spite of the single-larceny rule.  One commentator has agreed that by the legislature's enactment of this section, the supreme court rejected the single-larceny rule.  4 Robert R. Rigg, *Iowa Practice: Criminal Law* § 11:46, at 413 (2013).  We rejected the single-larceny rule in *State v. Chrisman*, finding " 'the prosecution is not required to accumulate thefts no matter how closely they may be connected.' " 514 N.W.2d 57, 59 (Iowa 1994) (quoting 4 Ronald L. Carlson and John L. Yeager, *Criminal Law and Procedure* § 324, at 99 (Supp. 1993)).  Thus, the single-larceny rule has no application to this case.

two separate cash registers); *Commonwealth v. Levia*, 431 N.E.2d 928, 931 (Mass. 1982) (holding under a similar statute that when a defendant took money from two separate employees the defendant committed two crimes, though the money belonged to the business); *Klein v. State*, 784 P.2d 970, 973 (Nev. 1989) (per curiam) (determining there were two robberies when defendant stole from two employees and one employee's testimony created a reasonable inference that both employees had joint control and possession of all the money in the store).

We must next determine if there was substantial evidence for the jury to find Copenhaver committed assaults against the bank tellers while having the intent to commit two separate and distinct thefts.

**C. Whether the District Court Erred in Finding There Was Substantial Evidence for the Jury to Find Copenhaver Committed Assaults Against Each Bank Teller.** This issue involves a sufficiency-of-evidence claim; therefore, we review it for correction of errors at law. *Thomas*, 561 N.W.2d at 39. Copenhaver challenges the sufficiency of evidence, claiming the evidence is not substantial to support he committed an assault against either bank teller. He specifically claims there is not substantial evidence to support an overt act against each teller or that he had the requisite intent to commit an assault against either teller.

Under the Code, the relevant act required for the crime of robbery is that the defendant "does any of the following acts to assist or further the commission of the intended theft" and one act is that the person "[c]ommits an assault upon another." Iowa Code § 711.1(1). The Code defines an assault in relevant part as follows:

> A person commits an assault when, without justification, the person does any of the following:

. . . .

> 2. Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

*Id.* § 708.1(2). The jury considered assault under section 708.1(2) for both of the robbery counts.

Copenhaver first argues there is not substantial evidence to support he committed an overt act during the commission of each robbery. "Assault requires an overt act." *State v. Heard*, 636 N.W.2d 227, 230 (Iowa 2001). In a previous case, we determined we must look at the defendant's actions in context to determine whether the defendant committed an overt act in furtherance of an assault. *See id.* at 230–31. In *Heard,* we found a person committed an overt act when he disguised his identity, went into the store in the early morning hours, demanded money in close proximity to a lone store clerk, took the money, told the clerk to lie down, and left the store. *Id.* at 228, 231.

Here, Copenhaver entered the bank wearing a mask and walked very quickly towards the first teller, Kasmiskie. He gave her a note that said, "this is a robbery" and demanded money from her. He also spoke to Kasmiskie. He told her it was a robbery, instructed her to give him the money, and told her not to hit any buttons. Kasmiskie testified Copenhaver spoke to her forcefully and her legs started to shake. When Copenhaver approached the second teller, Ries, Copenhaver spoke to her in a demanding tone of voice and said, "Give me your f_____ 50's and 100's." Copenhaver also gestured at her to give him the money and his gloved hand touched her nose a couple times. These facts, in context, constitute substantial evidence to support the jury's finding of an overt act supporting the commission of an assault for each charge of robbery.

Next, Copenhaver argues substantial evidence does not support he had the requisite intent to commit an assault for either robbery. Assault under Iowa Code section 708.1(2) is a specific intent crime. *State v. Fountain*, 786 N.W.2d 260, 264 (Iowa 2010). The specific intent required under the statute is the intent "to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive." Iowa Code § 708.1(2). Therefore, Copenhaver must have intended to cause each bank teller to fear immediate painful, injurious, insulting, or offensive physical contact. We may infer intent from the defendant's actions and the circumstances of the transaction. *State v. Keeton*, 710 N.W.2d 531, 534 (Iowa 2006).

As to the first teller, Kasmiskie, we can infer from Copenhaver's actions of wearing a mask, walking quickly towards her, and speaking forcefully to her that he had the specific intent to place Kasmiskie in fear of immediate physical contact, which would be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act. Factually, Copenhaver's actions caused her legs to shake. We can also infer he had the specific intent to place Ries in fear of immediate physical contact, which would be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act because of Copenhaver's demanding voice together with his gestures and his gloved hand touching her nose a couple times. Accordingly, the record contains substantial evidence that could convince a rational trier of fact the defendant met the specific-intent requirement to commit two assaults.

Thus, we find there is substantial evidence to support two robbery convictions. Therefore, Copenhaver's sentence was not illegal.

**V. Disposition.**

We find substantial evidence supports Copenhaver's two robbery convictions. Additionally, we agree with the court of appeals in its determination of Copenhaver's pro se claims. Accordingly, we affirm the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except Mansfield and Waterman, JJ., who concur in part and dissent in part.

**MANSFIELD, Justice (concurring in part and dissenting in part).**

I agree with the majority's overall approach, which involves parsing the statutes to determine the unit of prosecution. However, when the general assembly enacted our present criminal code, it was writing against the background of the single-larceny rule. Apparently, it intended to perpetuate that rule, or so we have indicated in prior cases. When I apply that rule, I find only one theft or intended theft, and thus only one robbery, despite the existence of two separate assaults. I therefore would reverse the second robbery conviction.

As the majority notes, to determine the unit of prosecution, we first need to examine the legislative definition of robbery. *See* Iowa Code § 711.1 (2009). When one reads that definition, the unit of prosecution appears to be an intended theft coupled with one or more assaults. *See id.* ("A person commits a robbery when, having *the intent to commit a theft,* the person does any of the following acts to assist or further the commission of *the intended theft . . . .*" (Emphasis added.)).

Copenhaver assaulted both tellers, so the question for me is whether there was one intended theft or two. If two, he can be convicted of two separate robberies. If there was only one intended theft, then only one robbery can follow.

This leads me to the legislative definition of theft. *See id.* § 714.1(1). Again, I agree with the majority's approach here. As noted by the majority, a theft occurs when a person "[t]akes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof." *Id.*

Under this somewhat imprecise legislative definition, one might conclude that taking money from two bank tellers working in the same

room could be considered two different thefts, and hence two different intended thefts.[3]

However, we have applied the rule of lenity when the unit of prosecution is ambiguous:

> Where the language of a criminal statute leaves an ambiguity with respect to the unit of prosecution, courts apply the rule of lenity: in cases of ambiguity or doubt as to legislative intent, only one offense may be charged.

*State v. Kidd*, 562 N.W.2d 764, 765 (Iowa 1997); *see also State v. Muhlenbruch*, 728 N.W.2d 212, 216 (Iowa 2007) ("[T]his court has recognized that strict construction of criminal statutes should be applied in cases where there is doubt regarding the allowable unit of prosecution.").[4]

More importantly, with theft, we have to deal with the historical "single-larceny rule" in this state. Before the current definition of "theft"

---

[3]Of course, the State did not prosecute the case that way. It charged Copenhaver with only a single theft from the bank and argued there were two robberies because there were two assaults. The majority properly rejects the notion that the unit of prosecution is the number of assaults, rather than the number of intended thefts.

[4]In *State v. Velez*, which I joined, we took the position that the lengthy discussion of the "rule of lenity" in *State v. Hearn* had overruled prior precedent and limited that rule to situations where there was " 'grievous ambiguity' " in a statute and " 'no [other] basis for choosing among plausible interpretations of a statute.' " *See State v. Velez*, 829 N.W.2d 572, 585 (Iowa 2013) (quoting *State v. Hearn*, 797 N.W.2d 577, 585–87 (Iowa 2011)). As I reread *Hearn*, I do not believe the extensive discussion of the rule of lenity therein actually reached that conclusion. In fact, the only conclusion we seem to have reached in *Hearn* is that "the rule of lenity does not apply if there is no ambiguity regarding the application of a statute to a given set of facts after examination of the text, the context of the statute, and the evident statutory purpose as reflected in the express statutory language." *Hearn*, 797 N.W.2d at 587. Notably, we have more recently indicated that "[w]e adhere to the rule of lenity, which guides us to resolve ambiguities in criminal statutes in favor of the accused." *State v. Hagen*, 840 N.W.2d 140, 146 (Iowa 2013).

Regardless, I continue to believe *Velez* was correctly decided, particularly in light of the minutes of testimony indicating the defendant had inflicted two or more separate blows, each of which caused a separate serious injury. *See* 829 N.W.2d at 583–84.

was adopted as part of the 1976 criminal code revision, *see* 1976 Iowa Acts ch. 1245, ch. 1, § 1401 (codified at Iowa Code § 714.1(1979)), we had the crime of "larceny." Under the longstanding definition of larceny in this state, that crime occurred when a person stole, took, and carried away property of another. *See, e.g.*, Iowa Code § 2612 (1851) ("If any person steal, take and carry away, of the property of another, any money, goods, or chattels . . . .").

In applying this definition of larceny, we found that "[t]he stealing of several articles at the same time and in the same act from the same person constitutes but one transaction, and is one act of larceny." *State v. Broderick*, 191 Iowa 717, 718–19, 183 N.W. 310, 311 (Iowa 1921). *Broderick* described an easy case, but we also found a single larceny on other occasions. For example, in *State v. Vandewater*, we upheld a jury determination that the defendant's theft of fencing materials from a single location constituted "a single transaction or single larceny," even though the defendant had to make two distinct trips or "asportations" to remove all the materials. 203 Iowa 94, 99, 212 N.W. 339, 342 (Iowa 1927).

In *State v. Sampson*, the defendant stole a watch from one roommate and $42 from another while both were sleeping. 157 Iowa 257, 258, 138 N.W. 473, 473 (Iowa 1912). Nevertheless, we held the state could only prosecute one larceny. *Id.* at 263, 138 N.W. at 475. "That an instant or several minutes may have intervened between seizing the watch and the purse can make no difference if these were a part of the same transaction wherein the accused carried out his design of stealing these articles." *Id.* at 259, 138 N.W. at 473. We discussed the single-larceny rule in 1977, following the enactment of the new criminal code and before the new code had taken effect. We did not suggest the

new code had changed anything. *See State v. Cabbell*, 252 N.W.2d 451, 452–53 (Iowa 1977) (holding that shoplifting from two separate department stores did not amount to a single larceny because of "the differences in owners, locations and times").

In fact, despite the changeover from the classic definition of "larceny" to the new crime of "theft" in the 1976 criminal code revision, we have continued to recognize the single-larceny rule. Thus we reiterated in 1981 that " '[w]here several articles are stolen from the same owner at the same time and place, only a single crime is committed.' " *State v. Amsden*, 300 N.W.2d 882, 884 (Iowa 1981) (quoting 52A C.J.S. *Larceny* § 53, at 479 (1968)). We declined to apply the single-larceny rule in 1983 to a theft of a tractor and a trailer, but only because the statute "provid[ed] otherwise," that is, the legislature had defined theft of a motor vehicle as a separate crime. *State v. Parker*, 342 N.W.2d 459, 462 (Iowa 1983). We also recognized the rule but declined to apply it in 1994 to thefts from two separate buildings. *State v. Chrisman*, 514 N.W.2d 57, 59–60 (Iowa 1994).

One might argue that section 714.3—also part of the 1976 revision—was intended to displace the single-larceny rule. Section 714.3 provides:

> If money or property is stolen from the same person or location by two or more acts, or from different persons by two or more acts which occur in approximately the same location or time period, or from different locations by two or more acts within a thirty-day period, so that the thefts are attributable to a single scheme, plan, or conspiracy, these acts may be considered a single theft and the value may be the total value of all the property stolen.

Iowa Code § 714.3 (2009).

However, in *Chrisman*, we held that section 714.3 conferred on the state "a power, not a duty," and then proceeded to separately consider

the single-larceny rule. *Chrisman*, 514 N.W.2d at 59–60. By doing so, we implicitly recognized that section 714.3 did not dispense with the single-larceny rule. Notably, section 714.3 sweeps much more broadly than the single-larceny rule and allows the state to aggregate, for example, removals of property from more than one location.[5]

I think the present case falls within the single-larceny rule.[6] Copenhaver obtained cash by going successively to two different teller windows in one room of the bank. Ask the question this way: If Copenhaver had simply been able to pick up the cash from the two different windows without putting anyone in fear, would there have been one theft or two? I think the answer is one.

Because I find only one intended theft occurred here, I cannot sustain the second robbery conviction. I do not claim originality for my position. I find helpful and persuasive much of the reasoning of the judge on the court of appeals who dissented in part. His opinion also cites to a number of out-of-state decisions that reach the same conclusion as we do. *See, e.g.*, *State v. Franklin*, 130 S.W.3d 789, 796 (Tenn. Crim. App. 2003) (finding only one robbery where defendants committed a single theft from a market, albeit from the presence of two persons, because Tennessee's robbery statute is "defined in terms of 'theft' ").

---

[5]As noted by the majority, one treatise claims that Iowa has rejected the single-larceny rule. *See* 4 Robert R. Rigg, *Iowa Practice: Criminal Law* § 11:46, at 413 (2013). However, that treatise cites only to *Chrisman*, and I do not think *Chrisman* supports that conclusion.

[6]The majority correctly points out that Copenhaver has not discussed the single-larceny rule in his briefing. However, Copenhaver vigorously contends that there was only one intended theft and hence only one robbery. The single-larceny rule is the reason why.

At the same time, I believe the out-of-state opinions cited by the majority are distinguishable. The Massachusetts case, *Commonwealth v. Levia,* does not involve a "similar statute." *See* 431 N.E.2d 928, 930 (Mass. 1982). Massachusetts law provides that a robbery occurs when a person "assaults another and robs, steals or takes from his person money or other property which may be the subject of larceny." *Id.* at 930 n.2. Thus, it defines robbery as an assault plus a taking from the person assaulted, not as an intended theft involving one or more assaults. As the Massachusetts Supreme Judicial Court stated, "In construing the armed robbery statute, this court has previously stressed the assault aspect of the crime." *Id.* at 930.

*Brown v. State,* the Florida case, arguably involves a statute where the unit of prosecution is a taking rather than an assault. *See* 413 So. 2d 1273, 1274 (Fla. Ct. App. 1982), *aff'd,* 430 So. 2d 446 (Fla. 1983). However, as one reads the Florida Supreme Court's opinion, it seems clear Florida does not follow a single-larceny rule like Iowa's. *See Brown,* 430 So. 2d at 447.

Nevada defines robbery as "the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his person or property." *See* Nev. Rev. Stat. Ann. § 200.380(1) (West, Westlaw current through 2013 Reg. Sess.). This is a victim-based statute. Thus, it is logical in Nevada to treat the number of *victims* as the unit of prosecution. *See Klein v. State,* 784 P.2d 970, 973 (Nev. 1989) (per curiam). Iowa does not have that kind of statute.

California—like Nevada—has a statute that appears to make the victim the unit of prosecution. It defines robbery as "the felonious taking of personal property in the possession of another, from his person or

immediate presence, and against his will, accomplished by means of force or fear." *See People v. Scott*, 200 P.3d 837, 840 (Cal. 2009) (internal quotation marks omitted). Hence, the California Supreme Court understandably reasoned that robbery is a crime of violence "committed against a person." *Id.* at 840–41.

Finally, Colorado's somewhat cryptic robbery statute provides that "[a] person who knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation commits robbery." *See People v. Borghesi*, 66 P.3d 93, 98 (Colo. 2003) (internal quotation marks omitted). In *Borghesi*, the Colorado Supreme Court found the statutory language not especially helpful and thus declined to follow a unit of prosecution analysis. *Id.* at 98 n.5. Instead, it drew upon "the common law emphasis on the assaultive nature of the crime." *Id.* at 99–103. I agree with the majority that we can and should follow a unit of prosecution approach in Iowa.

In short, the main thing these cases establish is that state laws differ from each other and one ought to read and construe every state's robbery statute on its own. None of the foregoing states follows Iowa's approach of defining robbery in terms of an intended theft plus "any" of the following conduct in furtherance of "the" intended theft.

For these reasons, I respectfully dissent in part.

Waterman, J., joins this concurrence in part and dissent in part.