# IN THE COURT OF APPEALS OF IOWA

No. 13-1989
Filed August 19, 2015

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOHNATAN SANCHEZ,**
    Defendant-Appellant.

_____

    Appeal from the Iowa District Court for Washington County, Randy S. DeGeest, Judge.

    Johnatan Sanchez appeals following his convictions of four counts of first-degree burglary and one count of possession of a firearm. **CONVICTIONS AFFIRMED, SENTENCE VACATED IN PART, AND REMANDED.**

    Mark C. Smith, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

    Thomas J. Miller, Attorney General, Kevin Cmelik and Mary A. Triick, Assistant Attorneys General, and Larry J. Brock, County Attorney, for appellee.

    Heard by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, J.**

On the evening of March 8, 2013, Sanchez was a guest at an unchaperoned gathering of high school students at a home in Washington. Five males from Burlington were also in attendance. At some point during the evening, the situation became tense after one of Sanchez's friends claimed he could not find his identification. Sanchez grabbed a double-barrel shotgun hanging on the wall, pointed it at each of the Burlington students, demanded the student empty his pockets, looked through the contents of any wallet turned over to him, took any cash he found in the wallet, and then returned the wallet to the student. Sanchez and another male followed the students outside, told them not to call the police, and threatened harm if they did. One of the students did notify the police.

The State charged Sanchez with five counts of robbery in the first degree and one count of being a felon in possession of a firearm. *See* Iowa Code §§ 711.1, 711.2, 724.26 (2013). One of the robbery counts was later dismissed. The matter was tried to a jury, and the jury found Sanchez guilty as charged. The district court sentenced Sanchez to indeterminate terms of incarceration not to exceed twenty-five years for each robbery conviction and not to exceed five years for the firearm offense, all sentences to run concurrent to each other. The district court also imposed a sentencing no-contact order, providing: "Defendant shall have no contact with [the victims] for five years after the defendant's release from prison. The Court will issue a separate order to further implement this paragraph." Sanchez timely filed this appeal.

I.

On appeal, Sanchez contends his conduct constituted only one robbery and the multiple convictions and sentences violate his rights under the Double Jeopardy Clause of the United States Constitution and violate Iowa's single-larceny rule. He raises these arguments in two ways: first, as a claim his counsel provided constitutionally ineffective assistance by failing to file a motion for judgment of acquittal on three counts of robbery; and second, as a claim that the sentences are necessarily illegal. Both of these claims are exceptions to our usual error-preservation requirement. *See State v. Rodriguez*, 804 N.W.2d 844, 848 (Iowa 2011) (noting ineffective-assistance-of-counsel claims provide "an exception to [the] normal rules of error preservation"); *State v. Gordon*, 732 N.W.2d 41, 43 (Iowa 2007) (stating illegal sentences are "not subject to the usual concepts of waiver, whether from a failure to seek review or other omissions of error preservation").

The State contends that Sanchez's illegal-sentence claim is really a masked substantive challenge to the robbery convictions, viz., does state law allow the conduct to be charged in separate counts as multiple offenses, and, if so, was there sufficient evidence to support each of the counts. We tend to agree. However, we recognize there is conflicting case law on the issue of whether this category of claim is a substantive challenge to the conviction or a claim for an illegal sentence. *See generally State v. Ross*, 845 N.W.2d 692, 700-01 (Iowa 2014); *State v. Copenhaver*, 844 N.W.2d 442, 447-52 (Iowa 2014); *State v. Velez*, 829 N.W.2d 572, 584 (Iowa 2013); *State v. Kidd*, 562 N.W.2d

764, 765-66 (Iowa 1997); *State v. Constable*, 505 N.W.2d 473, 477-78 (Iowa 1993). We need not address the question and resolve the conflict, however, because the claim fails on the merits.

Without regard to the particular framework or rubric under which Sanchez makes the claim, we directly address the double jeopardy claim underlying all of Sanchez's argument. "[T]he Federal Double Jeopardy Clause protects against three types of offenses: protection against a second prosecution after acquittal; protection against a second prosecution after conviction; and protection against multiple punishments for the same offense." *Velez*, 829 N.W.2d at 584. The protection applies to state action through the Fourteenth Amendment to the United States Constitution. *See Benton v. Maryland*, 395 U.S. 784, 794 (1969). Sanchez claims that his multiple robbery convictions and sentences violate the protection against multiple punishments for the same offense.

Sanchez's double jeopardy argument fails because he fails to distinguish his federal double jeopardy claim from a substantive challenge to state law defining the offenses. The Supreme Court has explained that it is the legislature, "and not the prosecution, which establishes and defines offenses. Few, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses." *Sanabria v. United States*, 437 U.S. 54, 69 (1978). Once the legislature "has defined a statutory offense by its prescription of the 'allowable unit of prosecution,' that prescription determines the scope of protection afforded." *Id.* at 69-70 (citations omitted). "Whether a particular course of conduct involves one or more distinct 'offenses' under the statute depends on

this [legislative] choice." *Id.* at 70. Thus, where state law allows a course of conduct to be prosecuted as separate offenses and allows multiple punishments to be imposed for the same, the Double Jeopardy Clause is not implicated. *See Missouri v. Hunter*, 459 U.S. 359, 366 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."); *Whalen v. United States*, 445 U.S. 684, 701 (1980) (Rehnquist, J., dissenting) ("To the extent that this latter thesis assumes that any particular criminal transaction is made up of a determinable number of constitutional atoms that the legislature cannot further subdivide into separate offenses, it demands more of the Double Jeopardy Clause than it is capable of supplying." (internal quotation marks omitted)). As one court explained:

> At times, nice "unit of prosecution" questions will arise. Are two pulls of the trigger one attempted murder or two? (Does it matter if the two pulls are aimed at two different persons; or aimed at the same person, but on different days, as parts of different schemes?) Is an ongoing course of continuous conduct one offense or several? Is marrying four women one bigamy or three? (Does it matter whether the marriages occur simultaneously or sequentially?) Is a liquor store stickup in which the robber takes money from two persons one armed robbery or two? (Does it matter whether the two are both clerks, or are instead one clerk and one store patron?) These questions are both fascinating and difficult, but they are ultimately questions of substantive law, questions on which the Double Jeopardy Clause is wholly agnostic. The Clause takes substantive criminal law as it finds it; it is outlandish (and judicially unworkable) to suppose that hidden deep in the word "offense" lies some magic metatheory of substantive criminal law, telling legislators in all times and places what can and cannot be made criminal.

*Ex parte Hawkins*, 6 S.W.3d 554, 557 n.8 (Tex. Crim. App. 1999) (quoting Akhil Reed Amar, *Double Jeopardy Law Made Simple*, Yale L.J. 1807, 1817–18 (1997)).

The Iowa Code defines robbery as occurring when a person who has the intent to commit a theft commits an assault, threatens another with or puts another in fear of immediate serious injury, or threatens to commit immediately any forcible felony in furtherance of the commission of the intended theft. *See* Iowa Code § 711.1(1). Our supreme court has determined that the unit of prosecution for robbery is the defendant's intent to commit a theft. *Copenhaver*, 844 N.W.2d at 449.

> If a defendant intends to commit only one theft, and the defendant does one or more of the following—commits an assault upon another, threatens another with or purposely puts another in fear of immediate serious injury, or threatens to commit immediately any forcible felony—only one robbery has occurred. This is true even if the defendant commits multiple assaults or a single assault on one person and threatens other persons with or purposely puts another in fear of immediate serious injury while intending to commit a single theft. We find this to be the unit of prosecution for robbery.
>     . . . .
>     . . . [I]f a defendant intends to commit two separate and distinct thefts, and the defendant accompanies each intended theft with one or more of the following—commits an assault upon another, threatens another with or purposely puts another in fear of immediate serious injury, or threatens to commit immediately any forcible felony—the defendant has committed two separate robberies.

*Id.* In *Copenhaver*, the supreme court determined the defendant intended to commit two separate and distinct thefts when he approached and took money from two bank tellers individually. *Id.* at 450. Even though the defendant argued there was only one victim—the bank—the court noted each teller was in

possession of the bank's property and the defendant intended to take possession or control of the property in the possession of each teller. *Id.*

Here, each of the robbery counts was based on separate units of prosecution. *See State v. Love*, 858 N.W.2d 721, 727 (Iowa 2015) (Mansfield, J., concurring specially) (explaining process of crafting and submitting instructions where the unit of prosecution may be at issue). The trial information in this case charged the defendant with four separate counts of robbery, identifying a separate victim in each count. Thus, the counts were not based on the same conduct.

When viewed in the light most favorable to the State, there is substantial evidence in support of the verdict on each count. In determining whether Sanchez had the intent to take and deprive others of their property, we may rely upon "the facts and circumstances surrounding the act, as well as any reasonable inferences to be drawn from those facts and circumstances." *See State v. Schminkey*, 597 N.W.2d 785, 789 (Iowa 1999). Here, the evidence showed Sanchez pointed the shotgun at each of the victims separately and in turn. He pointed the shotgun at two of the victims' heads. He pointed the shotgun at another's face. He pointed the shotgun at another's chest. Sanchez ordered each victim separately and in turn to empty his pockets. Sanchez then took the wallet, if one was given to him, removed any money, and returned the wallet to the victim. Although Sanchez's conduct occurred at the same location and during a short period of time, he pointed the shotgun at each of the victims individually and intended to take items in their individual possession.

Sanchez argues in the alternative that his four robbery convictions violate the single-larceny rule, which states that the "theft of articles belonging to different persons at the same place and time constitute a single offense. The matter of ownership does not characterize the crime." *State v. Sampson,* 138 N.W. 473, 475 (Iowa 1912). This rule predates the adoption of the present criminal code. *Copenhaver*, 844 N.W.2d at 450 n.2. When the legislature adopted a new criminal code in 1976, it gave the State the discretion to charge a defendant with multiple crimes in spite of the single-larceny rule or to accumulate thefts for the purposes of establishing value under certain circumstances. *Id.* Thus, the supreme court "rejected the single-larceny rule in *State v. Chrisman*, finding the prosecution is not required to accumulate thefts no matter how closely they may be connected." *Id.* (internal quotation marks omitted). Even if the single-larceny rule survived the code revisions, it is inapplicable here. The rule applies where the stolen property is owned by two or more people and stored in the same location. The rule is not applicable where the defendant takes property directly from the person of another, which is codified as a separate class "C" felony. *See* Iowa Code § 714.2(1).

Because the evidence supports a finding Sanchez committed four robberies, Sanchez cannot show counsel was ineffective by failing to file a motion for judgment of acquittal or that his robbery sentences were legally imposed. Accordingly, we affirm the robbery convictions and sentences, with one exception discussed below.

II.

Sanchez challenges the provision of the sentencing order that prohibits him from having contact with the robbery victims for five years after his release from prison. Sanchez argues the term of the prohibition extends beyond that provided for in Iowa Code section 664A, and therefore, the court did not have the power to impose it. *See State v. Manser*, 626 N.W.2d 872, 875 (Iowa Ct. App. 2001) (noting the court's power to punish a defendant only extends as far as the Iowa Code authorizes). Because "[a] sentence not permitted by statute is void," *State v. Ohnmacht*, 342 N.W.2d 838, 842 (Iowa 1983), Sanchez asks us to vacate this portion of the sentencing order.

We first address the State's argument the no-contact order is not subject to review in this direct appeal because it is not a sentencing option under Iowa Code section 901.5. Section 901.5 merely identifies the sentencing options the district court must consider in every case. *See* Iowa Code § 901.5 (stating "the court shall consider the following sentencing options"). Nothing in the language of section 901.5 limits the district court's authority to include other terms in a sentencing order. Rather, the court's sentencing options are limited to those authorized by law. *See Manser*, 626 N.W.2d at 875 (vacating the defendant's sentence because it was not authorized by the "general-application sentencing provisions" or any other provision of the Iowa Code). For instance, section 901.5 does not include restitution among the listed sentencing options. However, restitution may be imposed as part of a sentencing order because restitution is authorized by statute. *See State v. Alspach*, 554 N.W.2d 882, 884 (Iowa 1996).

Likewise, no-contact orders are not discussed in section 901.5, but they are authorized pursuant to chapter 664A.

We next address the State's argument that the no-contact order is not subject to review in this direct appeal because it is collateral to and not part of the sentence. In determining whether a provision can be challenged as an illegal sentence, the relevant question is whether the provision was included in the sentencing order. If contained in the sentencing order, it is part of the sentence that may be challenged at any time, whereas those matters that follow the entry of final judgment are collateral and must be separately appealed. *See State v. Formaro*, 638 N.W.2d 720, 727 (Iowa 2002) (distinguishing those situations where the terms and conditions of bail are contained in a judgment and sentence and are therefore subject to challenge on direct appeal with those situations in which the court addresses the issue of bail following the entry of a judgment and sentence and therefore the ruling must be separately appealed); *Alspach*, 554 N.W.2d at 884 (holding a defendant is entitled to court-appointed counsel when challenging restitution imposed as part of the original sentencing order and distinguishing restitution imposed in sentencing orders from later actions to modify a restitution plan, which are "civil in nature and not part of the criminal proceedings"). The unpublished opinion cited by the State for the proposition that a no-contact order is not part of a defendant's sentence supports this distinction. In that case, the court "did not continue the no-contact order as part of the sentence." *State v. Hughes*, No. 02-1751, 2003 WL 22469744, at *2 (Iowa Ct. App. Oct. 29, 2003). Instead, "as a separate matter, not a part of a

sentencing, the trial court ordered a one-year extension of the no-contact order so as to prohibit [the defendant] from contacting the victim prior to beginning his sentence, pending appeal." *Id.* The case at bar differs because the sentencing order includes a provision prohibiting Sanchez from having contact with the victims for five years. Therefore, it is part of the sentence and may be challenged in this appeal. *See State v. Schnieders*, No. 14-1675, 2015 WL 4233382, at *4-5 (Iowa Ct. App. July 9, 2015) (considering an appeal of a section 664A.2 no-contact order as part of a sentence); *State v. Grover*, No. 14-0072, 2014 WL 7343514, at *1-2 (Iowa Ct. App. Dec. 24, 2014) (finding a firearm prohibition included in a chapter 664A no-contact order was an illegal sentence because it was not authorized by chapter 664A, standing alone); *State v. Smith*, No. 13-1268, 2014 WL 2600325, at *3 (Iowa Ct. App. June 11, 2014) (vacating as an illegal sentence the portion of a chapter 664A no-contact order entered at sentencing because the condition prohibiting the defendant from contact with all juveniles was unreasonably excessive); *State v. Cramer*, No. 09-0957, 2010 WL 2925127, at *6-7 (Iowa Ct. App. July 28, 2010) (concluding the defendant did not receive an illegal sentence when issued a chapter 664A no-contact order as part of his sentence because protected party was a victim as the term is used in chapter 664A).

Iowa Code section 664A.5 states that upon conviction of a public offense for which there is a victim, "[t]he court may enter a no-contact order or continue the no-contact order already in effect for a period of five years from the date the judgment is entered." The sentencing order here states no-contact orders shall

be entered preventing Sanchez from contacting any of the robbery victims "for five years after the defendant's release from prison." This portion of the sentencing order clearly imposes a sentence outside of statutory limits and is therefore void. Accordingly, we vacate the portion of the no-contact order prohibiting the defendant from having contact with any of the victims for five years after his release from prison.

III.

For the above-stated reasons, we affirm the defendant's convictions for four counts of robbery. We affirm the defendant's sentences for the same except that we vacate the no-contact provision of the sentencing order and remand for entry of a corrected order that complies with the provisions of Iowa Code section 664A.5.

**CONVICTIONS AFFIRMED, SENTENCES VACATED IN PART, AND REMANDED.**