# IN THE COURT OF APPEALS OF IOWA

No. 23-0909
Filed October 2, 2024

**JAMISON ALBERT FISHER,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Scott County, Henry W. Latham II,

Judge.

        An applicant for postconviction relief appeals the denial of his claim.

**AFFIRMED.**

        John Audlehelm of Audlehelm Law Office, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Richard J. Bennett, Assistant Attorney

General, for appellee State.

        Considered by Ahlers, P.J., Badding, J., and Gamble, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**GAMBLE, Senior Judge.**

Jamison Fisher appeals the dismissal of his application for postconviction relief. Finding Fisher did not establish prejudice in his ineffective-assistance-of-counsel claim because substantial evidence supports the challenged element of theft, we affirm.

### I.    Background Facts & Proceedings.

Fisher was convicted of first-degree theft of a truck and trailer. In his last amended application for postconviction relief, Fisher accepted the facts as summarized by this court on his direct appeal:

> On September 8, 2018, Bradley Maxwell reported the theft of his 1993 GMC Sierra truck and an attached trailer. He had parked it in the parking lot of his business, Maxwell Transmission. The attached trailer was used to transport race cars. It contained various tools. Bradley testified he may have forgotten the keys in the truck but no one had permission to take his truck and trailer.
> Bradley's friend spotted the truck, and police responded. Fisher and Emily Hintze were found with the truck. But the trailer was not there. Fisher and Hintze were arrested. They were released the following day.
> Bradley's son, Derek Maxwell, remembered Hintze from high school. He confronted her about the missing trailer over Facebook. He received the following response from Hintze's Facebook account: "This is Jamie Fisher . . . . Your trailer is on the island parked it on an empty lot it's not a big place you can find it. The girl had nothing to do with it the [drugs] she had on her was mine." The trailer was then found.

*State v. Fisher*, No. 19-0337, 2020 WL 1548498, at \*1 (Iowa Ct. App. Apr. 1, 2020). The truck had a sticker on the side window that said, "Maxwell Transmission," and the trailer had the Maxwells' race number on the front. Fisher had done roof work on the Maxwell Transmission building the year before. The truck and trailer were taken in the town of Mt. Joy in Scott County; Fisher and Hintze were found with the

truck in Bettendorf; the trailer was located in the woods on Campbell's Island which is only accessible from the Illinois side of the Mississippi River.

The jury was presented with "two theories of theft—theft by taking and theft by possession of stolen property." *Id.* at *2. The general verdict form allowed the jury to find Fisher guilty under either theory. In his direct appeal, Fisher challenged his conviction under the theory of theft by taking, and this court affirmed, finding "sufficient circumstantial evidence for the jury to connect the dots and conclude Fisher took the truck and trailer." *Id.* Although Fisher made a general claim the State failed to prove the intent element of theft by taking, the claim had no "support, analysis, or further argument on the intent element," and the court found the issue not sufficiently argued for appellate review. *Id.* at *2 n.3. Fisher filed an application for postconviction relief in January 2021.

Fisher's initial application and subsequent amended and recast applications alleged ineffective-assistance-of-counsel claims and actual innocence. Among the ineffective-assistance claims, he asserted appellate counsel on direct appeal failed to properly support the argument challenging his intent under the taking theory because "whoever took the property did not have the intent to permanently deprive the owner." The district court found Fisher failed to prove each claim by a preponderance of evidence. On appeal, Fisher only urges appellate counsel was ineffective for failing to argue he did not have the intent to deprive the owner of possession or control of the property. We discuss additional facts relevant to his claim in our analysis.

## II.     Scope of Review.

Postconviction-relief applications alleging ineffective assistance of counsel raise a constitutional claim, which we review de novo. *Krogmann v. State*, 914 N.W.2d 293, 306 (Iowa 2018). We give weight to the district court's findings concerning witness credibility, but we are not bound by them. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). In order to establish ineffective assistance, the claimant must establish "counsel's performance fell 'below the standard demanded of a reasonably competent attorney'" and that they were prejudiced by the deficient performance. *Krogmann*, 914 N.W.2d at 306–07 (citation omitted). Here, Fisher challenges "the level of professional competency on the part of [his] original appellate counsel." *See Osborn v. State*, 573 N.W.2d 917, 922 (Iowa 1998). We assume without deciding that appellate counsel breached an essential duty in failing to argue sufficiency of evidence to support the "intent to deprive" element of theft by taking. However, we choose to focus on the prejudice prong of Fisher's ineffective-assistance claim.

To prevail, Fisher must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Millam v. State*, 745 N.W.2d 719, 722 (Iowa 2008) (cleaned up) (citations omitted).

Thus, to establish prejudice, Fisher needs to show he would have prevailed on appeal on his challenge to the sufficiency of the evidence regarding the intent element. This sufficiency claim would have been reviewed for correction of errors at law on direct appeal. *See State v. Copenhaver*, 844 N.W.2d 442, 449

(Iowa 2014). This standard means we would have "consider[ed] all the evidence presented at trial and view[ed] the evidence in the light most favorable to the [S]tate." *Id.* "The jury's verdict is binding if supported by substantial evidence." *State v. Lee*, 6 N.W.3d 703, 706 (Iowa 2024). This evidence includes "all legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* at 706–07 (cleaned up) (citation omitted).

### III. Analysis.

Fisher challenges the denial of his claim against appellate counsel, arguing the court's conclusion was based on a credibility finding with no additional legal analysis.

The district court's rejection of this claim was brief:

> The testimony from appellate counsel . . . was very compelling on this issue and the Court finds her testimony very credible. The Court of Appeals affirmed Mr. Fisher's conviction. And upon examination, [appellate counsel] testified that there was sufficient evidence of taking. In the alternative, [counsel] testified it was harmless error not to argue there was insufficient evidence of "intent to deprive," as there was sufficient evidence of Mr. Fisher being in possession of stolen property.

While we give weight to the district court's credibility finding concerning counsel's testimony that there was sufficient evidence of theft by possession of stolen property, counsel did not specifically testify it was "harmless error" to not argue about the sufficiency of the evidence of intent under the theft by taking alternative. Rather, counsel observed sufficient evidence the property was stolen for the possession alternative "would undercut any argument there was no intent to permanently deprive" under the taking alternative. The district court's framing does not account for general verdict law at the time of Fisher's conviction. At the

time of Fisher's offense and trial (though not the appeal), Iowa courts reversed for new trial "when the jury returned a general verdict and not all the theories were supported by substantial evidence." *State v. Tyler*, 873 N.W.2d 741, 754 (Iowa 2016), *superseded by statute*, Iowa Code § 814.28 (Supp. 2019) (proscribing the appellate court's reversal of a general verdict as long as one or more theory presented "is sufficient to sustain the verdict").[1]  It is unclear whether Fisher's direct appeal decided in 2020 would have been reversible under the general verdict caselaw if we determined there was not sufficient evidence to support the "intent to deprive" element of the theft by taking alternative, given the 2019 statute.[2]  Due to this uncertainty, we cannot say the error would have been harmless.

In this appeal, neither party addressed the applicability of section 814.28 or previous general verdict case law, and we decline to speculate and decide arguments counsel did not make.  *See Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments Autorama might have made and then search for legal authority and comb the record for facts to support

---

[1] On direct appeal, Fisher's counsel had asked this court to find the new statute did not apply to Fisher's right to a new trial, but we declined to reach the issue. *See Fisher*, 2020 WL 1548498, at *2 n.4.

[2] In 2020, this court found section 814.28 "lacks language clearly indicating a legislative intent for retroactivity" and declined to apply it when conviction predated the statute.  *State v. Warren*, No. 19-0267, 2020 WL 2488183, at *3 (Iowa Ct. App. May 13, 2020), *aff'd in part, rev'd in part*, 955 N.W.2d 848 (Iowa 2021) (finding the theory of guilt Warren was convicted under was discernible in the bench trial ruling and not addressing Iowa Code section 814.28); *see also State v. Foster*, No. 19-0918, 2020 WL 4498847, at *7 n.9 (Iowa Ct. App. Aug. 5, 2020).  The supreme court has not taken up challenges to the Code section to date, instead examining all theories presented for sufficient evidence.  *See State v. West Vangen*, 975 N.W.2d 344, 347 (Iowa 2022).

such arguments."); *see also State v. Lange*, 831 N.W.2d 844, 847 (Iowa Ct. App. 2013) ("[W]e refuse to assume a partisan role and undertake a party's research and advocacy."). Lacking any briefing on the issue, and following the supreme court's example, we will not address whether section 814.28 would control. *See West Vangen*, 975 N.W.2d at 347; *see also Fisher*, 2020 WL 1548498, at *2 n.4 (declining to address the applicability of section 814.28 by deciding the merits).

So we turn to the merits of Fisher's claim, that the State failed to prove his intent to deprive under the theory of theft by taking. The elements of theft by taking required the State to prove beyond a reasonable doubt:

> 1. On or about the 8th day of September, 2018, in Scott County, Iowa, the defendant took possession or control of property belonging to Bradley Maxwell.
> 2. The defendant did so with the intent to deprive Bradley Maxwell of the property.
> 3. The property, at the time of the taking, belonged to Bradley Maxwell.

In Fisher's view, the fact that the truck was recovered undamaged—with even the window sticker intact—combined with the fact that after Fisher's arrest and release, the owner was directed to the location of the trailer with all of its contents still present indicates "whoever took the property did not have the intent to permanently deprive the owner." And, at the postconviction trial, Fisher's appellate counsel admitted that, in retrospect, there were arguments she could have made about "no intent to permanently deprive the owner of either the truck or trailer." But she limited that admission, stating, "if there was sufficient evidence that the property was stolen, that that would undercut any argument that there was no intent to permanently deprive."

Fisher argues the facts fall in a "grey area" allowing appellate counsel to argue they do not indicate an intent to deprive under *State v. Berger*, 438 N.W.2d 29 (Iowa Ct. App. 1989). "[T]he intent to deprive used in the theft statute 714.1(1) . . . requires more than a temporary dispossessing of another's property, although a deprivation is not necessarily a permanent thing." *Berger*, 438 N.W.2d at 31. The *Berger* court adopted as a definition for intent to deprive a then-uniform jury instruction:

> Intent to "deprive the other" of the property means to permanently withhold, *or* cause it to be so withheld for an extended period of time, or under such circumstances, that its benefit or value is lost; *or*, the property is disposed of in such a manner or under such circumstances, as to render it unlikely that the owner will recover the property.

*Id.* (citation omitted). But in a later case, our supreme court revisited the definition and held that under the theft statute, the intent must be "to *permanently* deprive the owner of his property." *State v. Schminkey*, 597 N.W.2d 785, 789 (Iowa 1999). The court went on to observe:

> Because proof that the defendant acted with the specific purpose of depriving the owner of his property requires a determination of what the defendant was thinking when an act was done, it is seldom capable of being established with direct evidence. Therefore, the facts and circumstances surrounding the act, as well as any reasonable inferences to be drawn from those facts and circumstances, may be relied upon to ascertain the defendant's intent.

*Id.* (internal citation omitted). Therefore, we believe the State had the burden to prove Fisher had the intent to permanently deprive Maxwell of the truck and trailer. The issue is whether the appellate court would have found there was insufficient evidence to support that proposition had Fisher's counsel argued the point on direct appeal.

Fisher testified at his postconviction trial that the trailer was not hidden—it "was parked right on the road. Literally three steps from the front of it." And that he knew where it was located because Hintze drove him by it trying to sell both the truck and trailer to him. But Fisher did not testify at his underlying trial. And we have to evaluate the claim based on evidence that was presented at trial.

The truck and trailer were taken from Maxwell's parking lot in Mt. Joy between 10:30 p.m. Friday night and 10:00 a.m. Saturday morning. The truck and trailer were driven through Bettendorf, over the Mississippi River, and then to Campbell's Island—a small island located off the highway on the Illinois side of the river "littered with houses"—where the trailer was detached and left on an out-of-the way residential lot. Both Bradley and Derek Maxwell testified it was difficult to detach the trailer from the truck. Fisher and Hintze drove around the area, putting around 100 miles on the truck before they were arrested, and the truck was recovered on Saturday evening in Bettendorf.

The trailer was found after Derek Maxwell sent Facebook messages to Hintze and received a vague response "on the island" as the trailer's location early Monday morning. Derek determined the message meant Campbell's Island, so he drove around until he discovered the trailer on the far side interior of the island and called law enforcement. He testified there were "[a] lot of places to hide a trailer" on the island, the trailer looked like it was intended to be hidden, and he "[w]onder[ed] how it got backed into that spot." The deputy responding to Derek's call described the trailer's location as "five to ten foot off the road but clearly visible" from a side street on the island. He described the location as a plotted address

with no home and as "a clearing but it looks overgrown," and that "they definitely tried to put it off the road, but it wasn't hidden well."

Hintze testified when Fisher picked her up in the truck, it did not have the trailer attached. She said she believed the truck was Fisher's, and she drove the truck because she had a license and Fisher did not. And she testified she saw Fisher send the Facebook message about the trailer to Derek, but that she did not know what trailer he was talking about or where it was. When asked if she had any experience in driving with forty-foot trailers or knew how to do so, she answered "No."

We think a jury could reasonably infer from the evidence presented at trial that Fisher had disposed of the trailer "so that it [wa]s unlikely the owner will recover it." *See Schminkey*, 597 N.W.2d at 789 n.1 (quoting Iowa Criminal Jury Instructions No. 1400.2 (1988)) ("[T]he portion of this instruction—'the property is disposed of so that it is unlikely the owner will recover it'—more accurately describes a circumstance from which an intent to permanently deprive may be inferred, rather than describing the intent itself."). Viewing the evidence in the light most favorable to the State—including Fisher's taking the trailer across state lines, hiding the trailer on an abandoned lot on a side street of a small island, and not sharing the location with the owner until after the owner's son had contacted Fisher's girlfriend with accusatory Facebook messages—substantial evidence supports the jury's verdict.

Because Fisher's claim would have failed on direct appeal, he cannot show that, but for appellate counsel's failure to argue the issue on appeal, the outcome of his direct appeal probably would have been different. *See Millam*, 745 N.W.2d

at 722. Therefore, he has failed to establish the prejudice element of his ineffective-assistance-of-counsel claim.

To the extent Fisher's brief raises additional arguments, we find them to be either unpreserved or without merit and affirm without further opinion.

We affirm the district court's denial of his application for postconviction relief.

**AFFIRMED.**