# IN THE COURT OF APPEALS OF IOWA

No. 24-1844
Filed October 29, 2025

**QUBE HOTEL IA, LLC, DHARMENDRA AMIN and DINA PATEL,**
    Plaintiffs-Appellees/Cross-Appellants,

**vs.**

**LOTUS HOTEL GROUP, LLC, and CHETAN PATEL,**
    Defendants-Appellants/Cross-Appellees.
_____

    Appeal from the Iowa District Court for Polk County, Coleman McAllister, Judge.

    Defendants appeal a bench trial ruling finding them liable for unjust enrichment and the damage calculation.  Plaintiffs cross-appeal a finding there was no breach of contract and the unjust enrichment damage calculation. **AFFIRMED ON APPEAL AND CROSS APPEAL.**

    Abbey C. Furlong (argued) and Maegan M. Gorham of Lane & Waterman LLP, Davenport, for appellants/cross-appellees.

    Matthew G. Sease (argued) of Sease & Wadding, Des Moines, for appellees/cross-appellants.


    Heard at oral arguments by Chicchelly, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

Lotus Hotel Group, LLC (Lotus) and Chetan Patel (Chetan) appeal a finding of unjust enrichment following a bench trial. They argue an entity not party to this lawsuit—Shree Hotel Group, LLC (Shree)—was enriched by Dharmendra Amin (Dharm) and Dina Patel (Dina)'s management services. In the alternative, they argue the court erred in reaching its damage calculation. Qube Hotel IA, LLC (QHI), Dharm, and Dina cross-appeal the district court's finding of no breach of contract. They too argue the court erred in its unjust enrichment damage calculation. Because we find substantial evidence supports the district court's ruling in all respects, and those findings are supported by detailed credibility determinations, we affirm on the appeal and cross-appeal.

## I. Standard of Review

The parties suggest the breach-of-contract and unjust-enrichment claims have different standards of review. However, "our review of a decision by the district court following a bench trial depends upon the manner in which the case was tried to the court," not necessarily the nature of the claim. *Carroll Airport Comm'n v. Danner*, 927 N.W.2d 635, 642 (Iowa 2019) (citation omitted). Because the case was tried at law, our review is for correction of errors at law. *Id.* "The district court's findings of fact are binding on us if they are supported by substantial evidence." *Dolly Invs., LLC v. MMG Sioux City, LLC*, 984 N.W.2d 168, 173 (Iowa 2023) (cleaned up). "[B]ecause the district court had the opportunity to assess the credibility of the witnesses, we do give deference to those findings." *State v. Bower*, 725 N.W.2d 435, 440 (Iowa 2006) (citation omitted).

## II.    Background Facts and Proceedings

Our factual recitation is colored by the district court's understandable conclusion all of the litigants "each lacked credibility for different reasons."  The court found some explanations "misleading at best," observed some actions by each side to be deceptive, and noted neither side was able to provide documentary support for their wildly diverging claims.  For these reasons, our review is guided by the credibility findings from which the district court teased out facts from the record.

Dina and Dharm are married United Kingdom citizens.  Both are educated professionals and enjoyed successful careers.  Dina has a legal degree and worked as a regional manager for a prominent petroleum company.  Dharm has a degree in electronic computer systems, and he worked as a chartered accountant in the U.K. for five years and as an investment banker for seventeen years.  As U.K. citizens, they had visitor visas to travel to—but not work in—the United States.

Chetan has an ownership interest in approximately twenty business entities, nine of which are hotel-related.  One of his ventures is Lotus, which owns a hotel in Polk City, Iowa; Lotus services the hotel's mortgage and property taxes. The hotel abuts a golf course and has forty-four rooms, with one converted to a live-in manager suite.  In 2018, Shree was the hotel's operating company, managing the hotel's day-to-day revenue and expenses.

After Dina and Dharm's daughter married an American, the couple started looking for investment opportunities that would allow them to spend time near their daughter's family.  In summer 2018, they learned that the Polk City hotel—by then named Qube Hotel—was for sale.  While on visitor visas, they traveled to the hotel

in August and stayed three nights to evaluate its business potential. Dina and Dharm learned Chetan had only recently purchased the property and planned for his brother-in-law's family to run it. But that fell through when their visas were denied, leaving Chetan without managing staff. Following their first visit, Dina and Dharm expressed continued interest in the property. The parties disagree on whether the premise of their ongoing negotiations was to purchase the hotel or merely an ownership interest in Shree, but the district court found that the parties had verbally agreed Dina and Dharm would purchase the hotel for $1.45 million.

Regardless, Dina and Dharm moved into the hotel in September and stayed through October. During that time, they shadowed Chetan's relatives and learned how to manage the hotel. They did not pay for lodging during this time. And at this point, they had not finalized any agreement regarding the hotel in writing.

In October, Dharm created a draft purchase agreement for the hotel based on a template provided by Chetan. Dina and Dharm also created an Iowa limited liability company, QHI, to operate the hotel and finalize the transaction with Chetan. In November, the couple returned to the U.K. to apply for nonimmigrant E-2 work visas, which require capital investment in a profitable enterprise in the United States while creating jobs in the United States. In their visa applications, Dina and Dharm claimed QHI purchased Qube Hotel for $1.45 million with a $100,000 deposit paid to Lotus and the rest covered with a financing agreement. Attached to the visa application was a signed purchase agreement dated October 10 between QHI and Lotus. Also included was a seller financing addendum, providing that Lotus would finance the remaining $1.35 million balance

for QHI, and it would pay Lotus $5,600 a month for 180 months. The application also included two checks representing the $50,000 payments to be made to Lotus.

But the documents attached to the visa applications were not what they seemed. The checks were never cashed. All the signatures on the submitted 2018 contract were signed by Dharm, though he claimed Chetan provided verbal authorization to sign. For his part, Chetan testified he never had any knowledge of the signed purchase agreement. Yet the couple sent the visa documents to Chetan and his attorney (at Chetan's behest) while they were in the process of submitting them. And it remained disputed at trial whether a seller financing agreement was ever reached.

In January of 2019, because of their represented purchase of the Qube Hotel, both Dina and Dharm received their E-2 visas, which only permitted employment by QHI. They started managing the hotel's daily operations in February. An April 2 promissory note was apparently drafted between QHI and Lotus for the purchase of the hotel, crediting QHI $120,000 a year toward the purchase for management services, another $100,000 for an outstanding invoice, and $50,000 for management services rendered between September 2018 and March 2019. But again, this promissory note was signed for Chetan by Dharm and its validity was disputed.

These sorts of contracts and negotiations continued for the next two years. Chetan claimed Dina and Dharm agreed to buy into Shree with sweat equity—receiving ownership as their management services fee. But the parties also worked together, including applying for government funds for Lotus and Shree to cover payroll during COVID. In summer 2021, the parties' negotiating efforts

intensified—seemingly due a visa issue—but no written agreement was reached. On July 31, Lotus took over operations of Qube Hotel and locked Dharm and Dina out of operations. In the end, it was undisputed that Dharm and Dina ran the hotel from February 2019 through July 2021, and the record contains no evidence that any entity paid them wages for their work.

In August of 2021, QHI brought suit against Lotus for breach of contract based on the alleged October 2018 contract. The petition was amended a couple months later to add Dharm and Dina as plaintiffs and Chetan as a defendant, along with additional claims for wages, unjust enrichment, and fraud. Chetan and Lotus counterclaimed seeking declaratory judgment that any purchase or sales agreements were void and unenforceable, alleging conversion of a vehicle used by the hotel, and claiming fraud by forgery of Chetan's signature.[1]

The matter eventually was tried in spring 2024, and the court heard three days of testimony including from Dharm, Dina, and Chetan. After trial, the court found QHI, Dharm, and Dina failed to prove there was an enforceable contract, dismissing their claim for breach. Similarly, the court found they failed to prove their fraud claims because no formal contract was signed based on false representations; for the same reason, the court denied a fraud claim by Lotus and Chetan. The court also found that Dharm and Dina were not paid by any entity for any management services they provided but, because their visas only permitted QHI to pay them, the court dismissed the employee wage claims against Lotus and Chetan. While Dharm and Dina had no claim for wages, the court found

---

[1] Other claims alleged by each party were voluntarily dismissed before trial.

Chetan "essentially conceded that Plaintiffs have a valid unjust enrichment claim." The court concluded Chetan and Lotus had equally benefited and received a windfall from QHI, Dharm, and Dina's services without paying for them. The court calculated a reasonable value for their services, offset with the value of housing and the vehicle allegedly converted, to conclude they were owed $176,958.36 plus interest.

Lotus and Chetan appeal; QHI, Dharm, and Dina cross-appeal.

### III.    Discussion

Lotus and Chetan challenge the district court's finding of unjust enrichment, the court's dismissal of their conversion claim, and the court's damages calculation as too high. QHI, Dharm, and Dina challenge the court's finding of no breach of contract and the damages calculation as too low. We consider each.

### A. Breach of Contract

To succeed on a breach-of-contract claim, a plaintiff must prove

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W. 2d 107, 111 (Iowa 2013) (citation omitted). Dharm, Dina, and QHI argue the court erred in finding that there wasn't agreement on the terms and conditions of the October 2018 contract. They maintain that the October 2018 contract was binding because Chetan either verbally gave Dharm authority to sign for him or Chetan's subsequent actions ratified the contract. Like the district court, we are unconvinced by either argument.

Dharm, Dina, and QHI point to Dharm and Dina's testimony and instances where Chetan authorized Dharm to sign on his behalf for support. But the district court "did not find either Dina or Dharm to be credible sources on whether the parties had entered into a contract." The court arrived at that conclusion after recounting evidence that diminished their credibility:

- The couple "took possession of a vehicle that they clearly had little, if any, legitimate claim to." And "they offer no explanation as to why they would not, at a minimum, be responsible for repaying the downpayment for the vehicle which was made by Chetan, and which was in excess of $18,000."

- Dina and Dharm's assertions in their visa application about buying the Qube hotel "were misleading at best." The couple "omitted that they signed Chetan's name to the purchase agreement, and finance agreement, and . . . that the two checks they wrote which they included in their application were never cashed."

- They claimed to have spent $160,000 on bar renovations for the hotel. However, "no receipts, invoices, bills, or proof of any kind to support their claim" were submitted in the nearly three years the litigation was pending.

- Separately, the couple claimed another $100,000 in reimbursement for hotel furnishings. But they provided no description, itemization, or even photos of any furnishings. The court further found the lack of photo evidence "jarring given that Dina testified the property was still at the hotel and [the couple] spent three or four months staying at the hotel following the filing of this lawsuit. In fact, [they] were even at the hotel on the eve of trial."

As for instances where Chetan authorized Dharm to sign on his behalf, we believe receiving verbal authority to sign vendor contracts and biannual reports in the course of regular conduct as another's agent is rather different from signing a $1.45 million contract at arm's length. And we see no basis on which we would set aside the district court' detailed credibility findings.

Turning to ratification, Dharm, Dina, and QHI assert Chetan acquiesced to the contract. They argue that Lotus and Chetan had actual knowledge of the contract and freely accepted almost thirty months of management services and thereby ratified the agreement. In support, Dharm, Dina, and QHI cite *GreatAmerica Financial Servics Corp. v. Natalya Rodionova Medical Care, P.C.*, 956 N.W.2d 148 (Iowa 2021). While we are skeptical of applying contract ratification under these facts as a general proposition, we don't need to—our caselaw makes it clear that ratification is generally a "question [that] should be submitted to the fact finder." *GreatAmerica Fin. Srvs. Corp.*, 956 N.W.2d at 155. And, on this issue, the district court made several important findings: "[W]hatever the parties' original understanding or verbal agreement . . . evolved over time. . . . [T]he only logical conclusion is that the parties' negotiations never really ended and there was no clear meeting of the minds on the terms of the contract." This conclusion is supported by substantial evidence. Both parties continued to negotiate and make proposals throughout the nearly three years they worked together, without ever referring to a valid, enforceable contract already in place or providing documentary proof of any fixed contract terms. We affirm on this issue.

## B. Unjust Enrichment

Both parties challenge portions of the district court's ruling as to unjust enrichment. Unjust enrichment requires a plaintiff to show "(1) enrichment of the defendant, (2) at the expense of the plaintiff, (3) under circumstances that make it unjust for the defendant to retain the benefit." *Livingood v. City of Des Moines*, 991 N.W.2d 733, 749 (Iowa 2023) (citation omitted). We consider whether substantial evidence supports each finding separately.

### 1. Third-party enrichment

Lotus and Chetan argue that the district court erred in not finding that Shree—which was not party to this suit—was the only entity enriched by Dina, Dharm, and QHI. However, Dina, Dharm, and QHI dispute whether this argument is properly preserved for appellate review. Lotus and Chetan didn't explicitly make this argument until their post-trial brief. As we understand it, Lotus argues (perhaps) that it paid Shree for management services—possibly including those performed by QHI, Dharm, and Dina—and Shree should be the party liable for unjust enrichment. Lotus and Chetan had years in which they could have pled in Shree as the party receiving the services performed by QHI, Dharm, and Dina and paid for by Lotus. But Lotus and Chetan did not name Shree as indispensable to be pled in at any time before trial, and they did not file a cross-petition against Shree as "liable for all or part of the plaintiff's claim." *See* Iowa Rs. Civ. P. 1.234(3), 1.246(2).

Following a bench trial, any "party, on appeal, may challenge the sufficiency of the evidence to sustain any finding without having objected to it by motion or otherwise." Iowa R. Civ. P. 1.904. But "[e]rror preservation requires a final ruling on a specific motion or request." *Halbur v. Larson*, 14 N.W. 3d 363, 373 (Iowa 2024). The district court did not explicitly rule on whether Shree was an enriched party. And at oral argument before our court, counsel for Lotus and Chetan was unable to identify any express or explicit ruling on this issue—instead suggesting the court must have impliedly done so. We cannot identify any ruling below on this third-party question. And Lotus and Chetan did not move for the

court to enlarge or amend its findings on the question of Shree's liability. As a result, they failed to preserve error, and we have no ruling on this issue to review.

### 2. Lotus Hotel Group, LLC

Lotus and Chetan also argue that Lotus is merely a real estate holding company and Shree was the management company responsible for the hotel's day-to-day operations. They claim the district court erred by finding Dina, Dharm, and QHI proved unjust enrichment because Shree—not Lotus—was enriched since it was responsible for providing the hotel's daily operations. We, like the district court, find this unconvincing.

It is undisputed that the parties' relationship began with the understanding that Dina and Dharm would purchase the hotel. The parties diverge on whether the deal moved from an outright purchase into a sale of a minority interest. The district court found Chetan wholly uncredible and his testimony on an alternative partnership sale unsupported by any "contracts, memorandums of understanding, or other documents . . . prepared or signed by the parties. . . ." While the parties never finalized contract terms, there is substantial evidence to support the district court's finding that Lotus was enriched by QHI's management services for nearly thirty months.

### 3. Chetan

Lotus and Chetan argue that the district court erred in finding Chetan personally liable for unjust enrichment. The district court found Chetan "tr[ied] to pay Dina and Dharm for their work, and through his admission in his trial testimony that he owes Plaintiffs money . . . essentially conceded that Plaintiffs have a valid unjust enrichment claim." They counter that Chetan's actions and admission were

only in connection with his role as an agent of Shree and additionally that Chetan, as a member of Lotus, is shielded from any personal liability to QHI under Iowa Code sections 489.104 and 489.304(1) (2021). Because of Chetan's blasé attitude in conducting business, we find it unnecessary to reach the issue of corporate liability shielding.

Throughout the record, Chetan regularly sent emails and text messages to Dina and Dharm through a single email and doesn't denote which role—member of Lotus, "internal" member of Shree, or just as Chetan—he is carrying out at any given time. Furthermore, as the district court found, "[i]t seems more likely that Chetan simply, on his own, concocted and assigned ownership interests in [Shree] as he saw fit, to serve whatever financial or tax need he had at the time he made each wildly divergent representation." Given Chetan's extraordinary corporate informality, and the resulting lack of corporate attribution to his misleading and manipulative behavior with the never-ending contract negotiations with Dharm and Dina, we find there is substantial evidence to support the district court's finding that Chetan conceded to the unjust enrichment.

## C. Damage Calculation

Both parties contest the district court's unjust enrichment calculation. The court valued Dharm and Dina's joint monthly contributions for hotel management and bookkeeping at $8833.33 per month. Lotus and Chetan argue that Dharm did not provide bookkeeping services beyond ordinary management services. Dina, Dharm, and QHI argue the court erred in its enrichment calculation, and that the offsets for lodging and the car should not have been included. We take each challenge in turn.

### 1. Bookkeeping

Lotus and Chetan argue that Dharm's services encompassed only general management services and did not require further compensation for bookkeeping in the amount found by the district court—$46,000 per year. They point to Lotus's retention of an accountant and emphasize that Dharm would provide summarized payroll data to the accountant. But bookkeeping and accounting are two different services. And the $46,000 figure reached by the court was provided by Lotus and Chetan's own expert witness. Furthermore, the court noted its chosen joint valuation of services was approximately the same as what Chetan attempted to claim in employee services for the federal Paycheck Protection Program loan, where he claimed Dharm and Dina should each be paid $4500 per month (for a joint total of $9000). There is substantial record evidence to support the court's valuation of Dharm and Dina's services.

### 2. Damage Calculation

Dina, Dharm, and QHI argue the district court erred in crediting Lotus and Chetan's expert on the damage calculation. They point out that the hotel's previous owner reported more than $160,000 a year in management and operational costs. But the court found Lotus and Chetan's expert testimony more convincing because it accounted for the seasonal nature of the hotel due to its connection with a golf course. The district court's conclusion was supported by substantial evidence, and we decline to tinker with damages.

### 3. Lodging and the Car

As to Dina, Dharm, and QHI's challenge of the lodging offset, they argue that lodging was never a part of their business negotiations and was already

factored into the $120,000 salary. The court noted that the lodging was nonetheless a benefit they enjoyed. It further noted that both experts valued the lodging at $13,400 per year.

As for the car offset, Dina, Dharm, and QHI argue that Lotus and Chetan have no greater interest than them in the car, and that Shree is the only entity with a greater right to possess. The court found that Chetan provided a personal vehicle to Shree for hospitality purposes. The district court also noted that the down payment for the vehicle was paid for by Chetan.

On our review, we find there is substantial evidence to support the district court's offsets for both items, and we affirm.

## IV.   Conclusion

Given the wildly disparate tales told by the parties, we agree with the district court the only proven claim was for unjust enrichment. Finding the court's calculations on that claim within the range of evidence, we affirm.

**AFFIRMED ON APPEAL AND CROSS-APPEAL.**